# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 28, 2023

Lyle W. Cayce
Clerk

No. 21-50875

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JOSUE DE JESUS HUERTA-RODRIGUEZ,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:19-CR-2852

Before STEWART, WILLETT, and OLDHAM, *Circuit Judges*.
DON R. WILLETT, *Circuit Judge*:

Under federal immigration law, a noncitizen who unlawfully reenters the United States is subject to a maximum prison term of 20 years if he was previously deported "subsequent to a conviction for commission of an

No. 21-50875

aggravated felony."[1] But what constitutes an aggravated felony? And what if what counted as aggravated yesterday is considered non-aggravated today?

Josue de Jesus Huerta-Rodriguez, a criminal noncitizen with a burglary conviction and two subsequent illegal-reentry convictions, was convicted of illegal reentry for a third time. The district court characterized his burglary conviction as an aggravated felony. The district court also characterized his two prior illegal-reentry convictions as aggravated felonies under a statutory provision stating that illegal reentry is *itself* an aggravated felony when committed by someone previously deported following an aggravated-felony conviction. The designation "aggravated felony" is significant because it subjects the alien to a maximum prison sentence of 20 years.

On appeal, Huerta argues that the district court mischaracterized his past offenses because, under an intervening Supreme Court case, his predicate burglary conviction no longer qualifies as an aggravated felony. He insists the district court erred in sentencing him under § 1326(b)(2). Instead, Huerta argues, the district court should have sentenced him under § 1326(b)(1), which imposes a 10-year maximum sentence when a defendant has been removed subsequent to a *non-aggravated* felony. Importantly, Huerta does not challenge the sentence itself, which is far below either the 10- or 20-year maximum; rather, he asks us to remand to the district court to reform the judgment to clarify that he was sentenced under § 1326(b)(1) rather than § 1326(b)(2).

We find Huerta's arguments unavailing. Although his predicate burglary offense may no longer qualify as an aggravated felony, the first of his three intervening illegal-reentry convictions was correctly considered an

---

[1] 8 U.S.C. § 1326(b)(2).

No. 21-50875

aggravated felony. Thus, Huerta was properly sentenced under § 1326(b)(2). However, because the judgment below lists only the generic illegal-reentry statute rather than the precise provision under which Huerta was sentenced, we REFORM the judgment to reflect that Huerta was sentenced under § 1326(b)(2) and AFFIRM the judgment as reformed.

## I

## A

We begin by briefly describing the statutory background.

Illegal reentry into the United States is governed by 8 U.S.C. § 1326. Specifically, § 1326(a) forbids a previously deported alien from returning to the United States without special permission, authorizing a maximum prison term of two years for those who illegally reenter. Section 1326(b) ratchets up the reentry penalties for certain categories of removed aliens. Relevant here, § 1326(b)(1) authorizes a maximum prison sentence of 10 years if the "removal was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony)[.]"[2] And § 1326(b)(2) authorizes a maximum 20-year term if the previous removal was "subsequent to a conviction for commission of an *aggravated* felony[.]"[3]

---

[2] 8 U.S.C. § 1326(b)(1)

[3] § 1326(b)(2) (emphasis added). In *Almendarez-Torres v. United States*, the Supreme Court labeled § 1326(b)(2) as a "penalty provision, which simply authorizes a court to increase the sentence for a recidivist." 523 U.S. 224, 226 (1998). Thus, because "[i]t does not define a separate crime," the Government is not required to charge the fact of a prior aggravated felony conviction in the indictment. *Id*. at 226–27.

No. 21-50875

A list of offenses that qualify as aggravated felonies is set out in the "Definitions" Section of the Immigration and Nationality Act (INA).[4] Relevant to Huerta, included in the list of aggravated felonies is: "[a] burglary offense for which the term of imprisonment [is] at least one year[.]"[5] Moreover, an illegal reentry in violation of § 1326 is *itself* an aggravated felony when it is "committed by one who has previously been deported following an aggravated felony conviction."[6] Specifically, 8 U.S.C. § 1101(a)(43)(O) lists as an aggravated felony:

> an offense described in section 1325(a) or 1326 of this title [an illegal entry or reentry offense] committed by an alien who was previously deported on the basis of a conviction for an offense described in another subparagraph of this paragraph [an aggravated-felony offense][.][7]

## B

We now turn to the factual and procedural history.

Josue De Jesus Huerta-Rodriguez is a Mexican citizen with a long criminal history in the United States consisting of a burglary and multiple illegal reentries. Huerta's burglary occurred in Iowa in 2002 when he and several gang members burglarized a residence while in possession of a

---

[4] 8 U.S.C. § 1101(a)(43). Originally enacted in 1952, the Immigration and Nationality Act has been amended many times over the years and contains important provisions of immigration law. Immigration and Nationality Act, Pub. L. No. 82-414, § 101, 66 Stat. 163 (1952) (codified as amended at 8 U.S.C. § 1101).

[5] *Id.* § 1101(a)(43)(G).

[6] *United States v. Piedra-Morales*, 843 F.3d 623, 624 (5th Cir. 2016) (per curiam) (citing 8 U.S.C. § 1101(a)(43)(O)).

[7] 8 U.S.C. § 1101(a)(43)(O).

No. 21-50875

dangerous weapon.[8] Huerta was convicted of first-degree burglary and sentenced to prison for up to 25 years.[9] In January 2007, he was paroled and deported to Mexico.

In 2015, Huerta was discovered in Texas by federal agents. He pleaded guilty to and was convicted of illegal reentry.[10] The presentence report (PSR) identified his Iowa burglary conviction as an aggravated felony and increased Huerta's offense level accordingly.[11] The PSR also listed the maximum sentence as 20 years, citing § 1326(b)(2).[12] Huerta did not object to the PSR, and the district court adopted it.[13] The judgment, which sentenced Huerta to roughly 11 months in prison and three years of supervised release, did not

---

[8] The record indicates that there were two victims of the burglary. "One of the victims was stabbed and assaulted, and the other victim was shot at close range and stabbed five times."

[9] The record does not specify the exact sentence imposed on Huerta for his Iowa burglary but indicates that he was "[i]mprisoned for a period not to exceed 25 years."

[10] *See* Judgment and Commitment, *United States v. Huerta-Rodriguez*, No. 2:15-CR-726 (W.D. Tex. 2015), ECF No. 28. Documents from Huerta's first and second illegal-reentry proceedings are not included in the record. However, we "may take judicial notice of prior court proceedings as matters of public record." *In re Deepwater Horizon*, 934 F.3d 434, 440 (5th Cir. 2019) (per curiam).

[11] *See* Revised Presentence Report, No. 2:15-CR-726 (W.D. Tex. 2015), ECF No. 23, ¶ 9. At the time of Huerta's first reentry, a previous deportation following an aggravated-felony conviction triggered an increase in the illegal-reentry offense level. However, the Sentencing Guidelines have since been amended to account for recidivism in a different way. *See* U.S. Sentencing Comm'n., U.S. Sentencing Guidelines Manual, Supp. to App. C, 146–159 (2016) (discussing amendment 802).

[12] *See* Revised Presentence Report, No. 2:15-CR-726 (W.D. Tex. 2015), ECF No. 23 ¶ 47.

[13] *See* Statement of Reasons, No. 2:15-CR-726 (W.D. Tex. 2015), ECF No. 29.

No. 21-50875

reference § 1326(b)(2) but listed only § 1326(a) as the statute of conviction.[14] Upon release from prison in 2016, Huerta was again removed to Mexico.

Following Huerta's first illegal-reentry conviction, the Supreme Court decided *Mathis v. United States*.[15] *Mathis* held that Iowa burglary is not "generic burglary" because the elements of Iowa's burglary statute are broader than those of a generic burglary offense.[16] This holding, that Iowa burglary is broader than generic burglary, when paired with the "categorical approach" used to determine if a prior crime is a "burglary offense" under § 1101(a)(43)(G) of the INA, meant that after *Mathis*, Huerta's Iowa burglary no longer qualified as an aggravated felony.[17]

---

[14] *See* Judgment and Commitment, No. 2:15-CR-726 (W.D. Tex. 2015), ECF No. 28.

[15] 579 U.S. 500 (2016). The issue in *Mathis* was whether an Iowa burglary conviction could give rise to a sentence enhancement under the Armed Career Criminal Act, which imposes a mandatory minimum on a defendant convicted of being a felon in possession of a firearm who also has three prior convictions "for a violent felony" including "burglary, arson, or extortion." *Id.* at 503 (citing 18 U.S.C. § 924(e)). The Court held that Iowa burglary could not give rise to the sentence enhancement because Iowa burglary is broader than generic burglary in that it includes unlawful entry into a broader range of locations than generic burglary. *See id.* at 507 ("The generic offense requires unlawful entry into a 'building or other structure.' Iowa's statute, by contrast, reaches a broader range of places: 'any building, structure, *[or] land, water, or air vehicle*.'") (emphasis in original) (citations omitted).

[16] *See id.* at 507.

[17] We use a categorical approach to decide whether a prior crime is a "burglary offense," and thus an aggravated felony under § 1101(a)(43)(G). *See, e.g.*, *United States v. Vega*, 960 F.3d 669, 675–76 (5th Cir. 2020). Under this categorical approach, we do not look to the defendant's *actual* conduct, but to whether the elements of the offense of conviction match the definition of a generic version of a crime. *Id.* at 675. Thus, even though Huerta's actual conduct may have fallen within the definition of "generic burglary," Huerta's burglary was not an aggravated felony under § 1101(a)(43)(G) because the elements of Iowa burglary are broader than the generic version of burglary. *See Mathis*, 579 U.S. at 507.

No. 21-50875

Less than two months after Huerta's 2016 removal, federal agents found Huerta in Texas yet again. And he was convicted of illegal reentry yet again. The PSR identified both Huerta's Iowa burglary and his first reentry as aggravated felonies.[18] It raised Huerta's offense level accordingly and, citing § 1326(b)(2), listed the maximum sentence as 20 years.[19] This time, Huerta objected to the PSR, arguing that an aggravated-felony enhancement should not apply because, after *Mathis*, his Iowa burglary conviction no longer qualified as an aggravated felony.[20] The district court disagreed, adopting the PSR without change[21] and sentencing Huerta to a two-year prison term for illegal reentry.[22] The judgment listed only § 1326 as the statute of conviction, again failing to expressly reference § 1326(b)(2).[23] Huerta did not appeal and was deported in August 2018.

This brings us to the present case.

Barely a year after Huerta's 2018 deportation, federal agents *again* found Huerta in Texas. He again pleaded guilty of illegal reentry in violation of § 1326. At sentencing, Huerta again objected to the PSR's treatment of his

---

[18] *See United States v. Huerta-Rodriguez*, Revised Presentence Report, No. 2:16-CR-939 (W.D. Tex. 2016), ECF No. 23 ¶ 9 ("[Huerta's burglary] conviction qualifies as an aggravated felony under USSG §2L1.2(b)(1)(C) and 8 U.S.C. § 1101(a)(43)(G)"), ¶ 10 ("[Huerta's illegal re-entry] conviction qualifies as an aggravated felony under USSG §2L1.2(b)(1)(C) and 8 U.S.C. § 1101(a)(43)(O)."). Again, we take judicial notice of the docket in Huerta's second reentry proceedings "as [a] matter[] of public record." *Deepwater Horizon*, 934 F.3d at 440.

[19] *See* Revised Presentence Report, 2:16-CR-939 (W.D. Tex. 2016), ECF No. 23 ¶ 53.

[20] *See* Addendum to Presentence Report, 2:16-CR-939 (W.D. Tex. 2016), ECF No. 23–1.

[21] *See* Statement of Reasons, 2:16-CR-939 (W.D. Tex. 2016), ECF No. 29.

[22] *See* Judgment and Commitment, 2:16-CR-939 (W.D. Tex. 2016), ECF No. 28.

[23] *See* Judgment and Commitment, 2:16-CR-939 (W.D. Tex. 2016), ECF No. 28.

No. 21-50875

Iowa burglary and his two prior illegal reentries as aggravated felonies. The parties briefed the issue, with Huerta reiterating his argument that his Iowa burglary and previous reentries did not count as aggravated felonies after *Mathis*. He asked that the PSR be amended to show the offense as enhanced under § 1326(b)(1) instead of § 1326(b)(2). The Government conceded that Huerta's burglary no longer qualified as an aggravated felony under *Mathis* but argued that § 1326(b)(2) still applied because Huerta's first illegal-reentry conviction, which directly followed the burglary conviction, was *itself* an aggravated felony under 8 U.S.C. § 1101(a)(43)(O). The district court agreed with the Government, concluding that Huerta was subject to the 20-year prison term under § 1326(b)(2). But the court imposed a prison sentence of just 57 months, well below the maximum term in either § 1326(b)(1) or § 1326(b)(2). Once again, the written judgment failed to cite the specific sentencing provision, listing only § 1326 as the statute of conviction. Huerta timely appealed.

## II

We review de novo whether a defendant's prior offense qualifies as an "aggravated felony."[24]

## III

On appeal, Huerta argues that the district court erred in sentencing him under § 1326(b)(2) for the third illegal-reentry offense because his prior burglary conviction is no longer an aggravated felony after *Mathis*, and therefore, his prior illegal-reentry offenses are also not aggravated felonies. He requests a remand to the district court to correct the judgment to specify

---

[24] *See United States v. Medina-Anicacio*, 325 F.3d 638, 643 (5th Cir. 2003); *United States v. Teran-Salas*, 767 F.3d 453, 457 (5th Cir. 2014).

that his illegal-reentry offense was enhanced under § 1326(b)(1) rather than § 1326(b)(2).

In addressing these arguments, we begin with a threshold question: whether Huerta is entitled to relief even assuming he is correct that he should have been sentenced under § 1326(b)(1) rather than § 1326(b)(2). Finding ample precedent for granting relief under these circumstances, we next consider the Government's argument that, by pleading guilty in his first illegal-reentry case, Huerta conceded that he was previously removed "subsequent to a conviction for commission of an aggravated felony." Concluding there was no concession, we turn to the core interpretive question: Must a court reexamine the aggravated-felony characterization of a predicate offense in light of new case law in order to sentence an alien under § 1326(b)(2)? We hold that when a court in an *intervening* illegal-reentry proceeding[25] characterized the defendant's predicate offense as an aggravated felony and sentenced him under § 1326(b)(2), there is no requirement for a court to revisit the predicate offense. Under these circumstances, the intervening illegal-reentry conviction is *itself* an aggravated felony that supports a § 1326(b)(2) sentence. We thus conclude that Huerta was correctly sentenced under § 1326(b)(2).

A

At first glance, the relief Huerta requests—reformation of his judgment to list § 1326(b)(1) specifically instead of § 1326 generally—may seem insubstantial. But we have reformed judgments in similar circumstances before, reasoning that an erroneous judgment implying that a

---

[25] By intervening illegal-reentry proceeding, we mean one that came between the predicate offense and the change in law that calls into question the aggravated-felony status of the predicate offense.

defendant's past crime was an aggravated felony rather than a felony "could have collateral consequences."[26] This is the case even when, as here, the alleged error in the judgment did not affect the sentence.[27] And because the judgment below cites only § 1326, whether we decide in favor of Huerta or in favor of the Government, it is proper that the judgment be corrected to reflect the precise provision under which Huerta should have been sentenced.

B

Relying on our precedent in *United States v. Gamboa-Garcia*,[28] the Government's principal argument is that Huerta made a concession during his first illegal-reentry case that precludes his argument here. In *Gamboa-Garcia*, the government sought enhanced penalties for illegal reentry under § 1326(b)(2) for a defendant who had a prior § 1326(b)(2) illegal-reentry conviction that was based on an underlying accessory-to-murder conviction.[29] The defendant argued that her accessory-to-murder conviction had been wrongly categorized as an aggravated felony, and as such, her first illegal-reentry conviction was also not an aggravated felony.[30] The *Gamboa-Garcia* court refrained from wading into the "interpretive dispute" whether § 1326(b)(2) requires a court to revisit aggravated-felony characterizations of past convictions.[31] Instead, the panel held that because the judgment in the

---

[26] *United States v. Ovalle-Garcia*, 868 F.3d 313, 314 (5th Cir. 2017).

[27] *Id.* (remanding to the district court for the purpose of correcting the judgment to reflect the fact that defendant was previously deported after a conviction of a *non-aggravated* rather than an aggravated felony, even after defendant had already served his sentence and was deported).

[28] 620 F.3d 546 (5th Cir. 2010).

[29] *Id.* at 547.

[30] *Id.* at 548.

[31] *Id.* at 549.

defendant's first illegal-reentry case stated that the defendant pleaded guilty to violating § 1326(a) with a sentencing enhancement under § 1326(b)(2), the defendant *admitted* she was previously removed "subsequent to a conviction for commission of an aggravated felony."[32] We thus concluded that the district court did not err in categorizing the defendant's accessory-to-murder conviction and first illegal-reentry conviction as aggravated felonies. The "guilty plea expressly eliminate[d] the interpretive question."[33]

*Gamboa-Garcia* has generated a host of decisions holding that a court will not revisit an underlying aggravated-felony characterization if the judgment accompanying the previous illegal-reentry conviction reflects that the defendant pleaded guilty to illegal reentry under § 1326(b)(2).[34] *United States v. Piedra-Morales* upheld that principle even when, as here, intervening case law had called into question whether the state conviction would still be treated as an aggravated felony today.[35]

This case does not present a straightforward application of *Gamboa-Garcia* and *Piedra-Morales* because, in those cases, the previous illegal-reentry judgments specifically reflected that the defendants had pleaded guilty under § 1326(b)(2).[36] Here, in contrast, the judgments for both of

---

[32] *Id.* (citation omitted).

[33] *Id.*

[34] *See, e.g.*, *United States v. Cuellar*, 738 F. App'x 320, 321 (5th Cir. 2018) (per curiam); *United States v. Riojas-Ordaz*, 756 F. App'x 498, 498 (5th Cir. 2019) (per curiam); *United States v. Barrieta-Barrera*, 2022 WL 885091, at *1 (5th Cir. Mar. 25, 2022) (per curiam).

[35] 843 F.3d 623, 624–25 (5th Cir. 2016) (holding prior guilty plea under § 1326(b)(2) precluded defendant from arguing that previous conviction was not an aggravated felony when intervening Supreme Court decision meant that offenses underlying prior illegal-reentry convictions no longer qualified as aggravated felonies).

[36] *See Gamboa-Garcia*, 620 F.3d at 549; *Piedra-Morales*, 843 F.3d at 625.

No. 21-50875

Huerta's prior illegal-reentry convictions list only § 1326 and do not specify a subsection. Thus, unlike in *Gamboa-Garcia* and *Piedra-Morales*, we cannot say that Huerta "conceded" that he sustained an aggravated felony conviction. Only the PSR's in Huerta's prior reentry cases, not the judgments, mentioned § 1326(b)(2). And failing to object to a PSR with nothing more is not a concession to the accuracy of its contents.[37] Finding that Huerta did not clearly make a concession under *Gamboa-Garcia*, we turn to the "interpretive dispute" left open in that case and later cases.

C

Must courts act out "a variation on the movie GROUNDHOG DAY,"[38] repeatedly reconsidering aggravated-felony characterizations from past convictions in order to sentence a defendant under § 1326(b)(2)? This is the question left open by *Gamboa-Garcia.* Today we answer "no"—but only for the narrow set of circumstances before us. When a defendant has a prior illegal-reentry conviction under § 1326(b)(2) that came *before* any intervening change in law calling into question the aggravated-felony status of the predicate offense, a district court does not err in sentencing the defendant under § 1326(b)(2). Under these circumstances, the prior illegal-reentry conviction is *itself* an aggravated felony that supports a subsequent § 1326(b)(2) sentence. Here, Huerta was convicted under § 1326(b)(2) in his first illegal-reentry case. That conviction occurred before the Supreme Court's *Mathis* decision called into question the aggravated felony status of

---

[37] *See United States v. Rojas-Luna*, 522 F.3d 502, 507 (5th Cir. 2008). Although Huerta failed to object to the PSR in his first illegal-reentry case, he *did* object to the PSR in his second illegal-reentry case, which occurred *after* the Supreme Court's *Mathis* decision. *See United States v. Huerta-Rodriguez,* Addendum to Presentence Report, 2:16-CR-00939 (W.D. Tex. 2016), ECF No. 23–1.

[38] *Gamboa-Garcia*, 620 F.3d at 549.

No. 21-50875

Huerta's Iowa burglary. Thus, Huerta's first illegal-reentry conviction qualifies as an aggravated felony *itself* under § 1101(a)(43)(O), and Huerta was correctly sentenced below under § 1326(b)(2). We reach this conclusion for two primary reasons.

*First*, categorizing a past illegal-reentry conviction under § 1326(b)(2) as an aggravated felony regardless of the present status of the predicate conviction is faithful to the most natural reading of § 1101(a)(43)(O). Again, § 1101(a)(43)(O) categorizes as an "aggravated felony":

> an offense described in section 1325(a) or 1326 of this title [an illegal entry or reentry offense] committed by an alien who was previously deported on the basis of a conviction for an offense described in another subparagraph of this paragraph [an aggravated felony offense][.][39]

The provision is written in past tense, anchoring the relevant timeframe of the inquiry in the past rather than the present. It classifies as an aggravated felony an illegal-reentry offense committed by an alien "who *was previously* deported on the basis of a conviction for . . . [an aggravated-felony offense]."[40] Quite simply, whether or not Huerta's Iowa burglary is now considered an aggravated felony, it is impossible to alter the historical fact that he was convicted of a crime considered at the time to be an aggravated felony and then deported.

*Second*, as the Government points out, Huerta's interpretation would render § 1101(a)(43)(O) functionally superfluous. Again, that provision, included within a list of offenses that qualify as "aggravated felonies" within the context of the INA,[41] provides that an illegal reentry is itself an

---

[39] 8 U.S.C. § 1101(a)(43)(O).

[40] *Id.*

[41] 8 U.S.C. § 1101(a)(43)(O) is situated in the "Definitions" section of the INA, which defines the meaning of terms "as used in this chapter." "This chapter" refers to

aggravated felony when it is "committed by one who has previously been deported following an aggravated felony conviction."[42] The term "aggravated felony" is used throughout the INA several times, usually as a trigger of negative consequences such as a sentence enhancement in illegal-reentry convictions or an exception to eligibility for cancellation of removal.[43] The INA does not distinguish between one aggravated felony in an alien's past or multiple. Put differently, throughout the INA, one aggravated felony triggers the same consequence as multiple. Thus, if the application of § 1101(a)(43)(O) always depends on a predicate crime simultaneously qualifying as an aggravated felony, then the provision would do no work. The predicate crime would always count as an aggravated felony in the defendant's past anyway, and the Government would not bother to prove that an illegal reentry was *also* an aggravated felony, since the consequences for one past aggravated felony are the same as the consequences for multiple under the INA. Because courts avoid interpretations that would render a provision largely superfluous, this weighs heavily against Huerta's interpretation.[44]

---

Chapter 12 of Title 8 of the United States code, also known as the Immigration and Nationality Act. *See* § 1101(a).

[42] *United States v. Piedra-Morales*, 843 F.3d 623, 624 (5th Cir. 2016).

[43] *See e.g.*, 8 U.S.C. § 1158(b)(2)(B)(i) (exception to authority to apply for asylum); § 1182(a)(9)(A) (inadmissible aliens); § 1226(d)(1) (identification of criminal aliens); § 1227(a)(2)(A)(iii) (deportable aliens); § 1228 (expedited removal); § 1229b(a)(3) (ineligibility for cancellation of removal); § 1231(b)(3)(ii) (exception to restriction on removal); § 1326(b)(2) (illegal-reentry sentence enhancement); § 1327 (aiding or assisting certain aliens to enter).

[44] *See City of Chicago v. Fulton*, 141 S. Ct. 585, 591 (2021). For what it's worth, our holding also makes perfect policy sense. It is probable that, through § 1101(a)(43)(O), Congress wished to deter aliens from illegally reentering when they had past convictions that qualified, *at the time of reentry*, as aggravated felonies. It makes little sense to let a defendant off the hook because his predicate offense no longer qualifies as an aggravated

No. 21-50875

To be sure, in *United States v. Fuentes-Rodriguez*, we decided in favor of reconsidering the defendant's past aggravated felony.[45] There, the defendant illegally reentered the United States after having been previously convicted of family-violence assault under Texas law. He pleaded guilty under § 1326(b)(2) but argued on appeal that his underlying family-violence assault conviction did not constitute an aggravated felony.[46] We initially disagreed, affirming the lower court conviction under § 1326(b)(2).[47] However, following a Supreme Court decision that made clear that defendant's family-violence conviction was *not* an aggravated felony, the Supreme Court granted the defendant's pending petition for a writ of certiorari, vacated our prior judgment, and remanded to us for further consideration.[48] On remand, we vacated the district court's judgment and remanded for entry of a reformed judgment reflecting that the defendant was sentenced under § 1326(b)(1) rather than § 1326(b)(2), reasoning that the predicate family-violence assault offense was not an aggravated felony in the

---

felony *years later*, when he previously reentered the United States with full knowledge of the status of his conviction. Holding that a prior illegal-reentry conviction under § 1326(b)(2) qualifies as an aggravated felony under § 1101(a)(43)(O) also dispels a key policy concern highlighted in *Gamboa-Garcia*. Namely, Huerta's interpretation "would render § 1101(a)(43)(O) essentially meaningless by undermining the finality of [] convictions, requiring courts repeatedly to reconsider arcane issues regarding prior convictions." 620 F.3d at 549.

[45] 22 F.4th 504 (5th Cir. 2022) (per curiam).

[46] *Id.* at 505.

[47] *Id.*

[48] *Id.*

wake of the new Supreme Court precedent.[49] We reached a similar conclusion in *United States v. Olvera-Martinez*.[50]

At first glance, *Fuentes-Rodriguez* and *Olvera-Martinez* seem to spell victory for Huerta, but a critical distinction makes all the difference. In our past cases, we were not faced with the unique set of facts we face here. In this case, sandwiched between the predicate conviction and the illegal reentry appealed from, the defendant racked up intervening illegal entry convictions under § 1326(b).[51] *Fuentes-Rodriguez* and *Olvera-Martinez*, by contrast, did not implicate § 1101(a)(43)(O) in any way. Here, it is significant that, in Huerta's first reentry case, which came before *Mathis* altered the legal landscape, the district court considered the predicate burglary offense an aggravated felony and sentenced him under § 1326(b)(2). Thus, Huerta's first illegal-reentry conviction *itself* qualifies as an aggravated felony under § 1101(a)(43)(O).

## IV

Putting the pieces together, Huerta was correctly sentenced under § 1326(b)(2) because he was previously removed "subsequent to a conviction for commission of an aggravated felony." Huerta's first illegal reentry, for which he was sentenced under § 1326(b)(2), was an aggravated felony under

---

[49] *Id.* at 505–06.

[50] *United States v. Olvera-Martinez,* 858 F. App'x 145 (5th Cir. 2021) (per curiam).

[51] It is important to note, however, that in *United States v. Martinez-Zamorano*, 228 F. App'x 497, 498 (5th Cir. 2007) (per curiam), we *did* face similar circumstances in which a defendant had an intervening illegal-reentry conviction. There, we held that that it was plain error to classify a defendant's prior illegal-reentry conviction as an aggravated felony after a Supreme Court decision held that the defendant's underlying marijuana possession offense was no longer an aggravated felony. *Id.* at 498. However, *Martinez* is an unpublished case, and *Gamboa-Garcia* explicitly declined to follow it. *See Gamboa-Garcia*, 620 F.3d at 548, n. 3.

No. 21-50875

§ 1101(a)(43)(O). Because the judgment cites only the general statute of § 1326, we REFORM the judgment to reflect that Huerta was convicted and sentenced under § 1326(b)(2). We AFFIRM the judgment as reformed.