# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 13, 2025

Lyle W. Cayce
Clerk

No. 24-50495

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Gustavo Torrijos-Ruiz,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:22-CR-296-2

_____

Before Smith, Graves, and Duncan, *Circuit Judges*.

James E. Graves, Jr., *Circuit Judge*:[*]

Gustavo Torrijos-Ruiz pleaded guilty to one count of conspiracy to transport illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) & (B)(i). He raises four points of error in his sentencing and imposition of the judgment. For the reasons explained below, we AFFIRM in part, VACATE the sentence, and REMAND for further proceedings consistent with this opinion.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-50495

## I.

Torrijos-Ruiz was indicted under 8 U.S.C. § 1324(a)(1)(A)(v)(I) & (B)(i) for his role in a conspiracy to transport illegal aliens. The indictment included a notice of demand for forfeiture of a firearm, magazine, ammunition, and firearm accessories that had been seized from Torrijos-Ruiz's coconspirator, Anthony James Cisneros.

Torrijos-Ruiz pleaded guilty without a plea agreement. His guilty plea was supported by a written factual basis, which was signed by both the government and Torrijos-Ruiz. During the plea hearing, Torrijos-Ruiz affirmed that the factual basis was true and correct, and that he had signed it knowingly and voluntarily. The stipulated factual basis was adopted by the district court.

The factual basis provided that on January 22, 2022, a United States Border Patrol agent initiated a lawful traffic stop of a vehicle driven by Cisneros. As the agent approached the vehicle, he saw three to four people moving around in the backseat. When the agent approached the driver's side, he told the backseat passenger closest to the driver's side door to stop moving, but the passenger did not appear to understand. The agent repeated the command in Spanish, and the passenger complied. Cisneros put his hands up and appeared visibly nervous. The agent then drew his firearm and instructed Cisneros to exit the vehicle. Three of the backseat passengers began to flee from the vehicle, ignoring the agent's instruction to stop. Cisneros and one other passenger remained behind.

Cisneros admitted to the agent that he had a handgun in the center console of the vehicle. A subsequent search revealed a Smith and Wesson, Model SD4O, .40 caliber Pistol in the center console, loaded with eleven rounds of ammunition in the pistol's magazine. Cisneros later said that he

had been sent a pin drop location of where to pick up the passengers and that there were more individuals waiting to be picked up.

Additional agents were able to apprehend the three passengers who had fled, one of whom was an unaccompanied minor child. All of the passengers were citizens of Mexico who lacked legal authority to enter the United States. One of these individuals told the agents that she had paid 26,000 pesos to be smuggled into the United States. She explained that she and a group of other people crossed into the United States with two guides. They followed the guides for four days until the main guide made a call. At that point, a vehicle arrived, and some members of the group were instructed to get into the vehicle. The main guide stayed behind with four others. Torrijos-Ruiz was later identified as the main guide.

Upon being apprehended, Torrijos-Ruiz admitted to guiding the group of illegal aliens into the United States. He stated that the arrangements were made in Mexico, and he was only instructed on what to do and where to go. He further stated that he was instructed to call a number once he approached a highway and to contact the driver of a vehicle that was coming to pick up the group.

After the plea hearing, Torrijos-Ruiz participated in an interview with probation for the presentence investigative report (PSR) with counsel present. There, Torrijos-Ruiz stated verbatim:

> I ask the Court for forgiveness for coming into the United States illegally and bringing in the people with me. We came to seek employment. When we crossed over, we all came together and were left in Mexico by the original smuggler. Between all of us, we decided to cross together. I had the cellphone and I called someone to pick us up. I ask for forgiveness. I only came to work to earn money to pay for medical bills after my father contracted COVID-19 virus. I knew we were all illegally present in the United States.

No. 24-50495

The PSR assigned Torrijos-Ruiz a base offense level of 12 and then enhanced his offense level by 3 points for transporting 6 or more illegal aliens, 4 points for transporting an unaccompanied minor, and 2 points for Cisneros' possession of a firearm. The PSR denied Torrijos-Ruiz a reduction for acceptance of responsibility, stating that he "minimized his role in the offense" and "made no reference to participating with others, known or unknown, while committing the instant offense." Accordingly, the PSR calculated Torrijos-Ruiz's total offense level at 21 with a Guidelines sentencing range of 41 to 51 months.

Torrijos-Ruiz did not object to the PSR initially. But at sentencing, he objected to the PSR's denial of an acceptance-of-responsibility reduction. The district court overruled the objection, explaining that, when speaking with probation, Torrijos-Ruiz "totally denied his involvement in this case, claiming he was just one of the aliens coming into work." While the district court acknowledged that Torrijos-Ruiz likely was coming into work and was honest with the agents upon being arrested, the district court stated that in his presentence interview:

> [Torrijos-Ruiz is] saying that they all got left by the original smugglers so they all agreed that they would cross together, and he had the cell phones so he called to have somebody pick him up. But he actually was a guide with his brother. . . . So he wasn't just coming to work, he was guiding the group, and he didn't admit that[.]

The district court adopted the legal and factual conclusions within the PSR. The district court also gave Torrijos-Ruiz the opportunity to address the court, in which he asked for "forgiveness . . . for having committed a crime."

The district court then orally pronounced a 48-month sentence of imprisonment, with a 3-year term of supervised release "with all the

4

conditions of supervision adopted by the Court in November of 2016." The district court also ordered forfeiture of whatever rights Torrijos-Ruiz had in the seized firearm, magazine, ammunition, and firearm accessories. The written judgment mostly tracked the oral pronouncement, but it stated that Torrijos-Ruiz was guilty of 8 U.S.C. § 1324, and it included the following condition of supervised release: "The defendant shall not communicate or interact with someone the defendant knows is engaged in criminal activity. If the defendant knows someone has been convicted of a felony, the defendant shall not knowingly communicate or interact with that person without first getting the permission of the Court."

## II.

Torrijos-Ruiz raises four arguments on appeal. First, he argues that the district court erroneously enhanced his sentence pursuant to U.S.S.G. § 2L1.1(b)(5)(C) based on Cisneros' possession of a firearm during the commission of the offense. Second, he argues that that the district court erred in denying him a sentencing reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility. Third, he argues that the written judgment imposes a more burdensome requirement for supervised release than the district court's oral pronouncement at sentencing, which was an abuse of the district court's discretion. And fourth, he argues that the district court committed a clerical error, requiring correction, because the written judgment references only the generic statute of conviction rather than specifying the applicable subsections. We address each argument in turn.

### A. U.S.S.G. § 2L1.1(b)(5)(C) Enhancement for Possessing a Firearm While Transporting an Illegal Alien

Under U.S.S.G. § 2L1.1(b)(5)(C), "[i]f a dangerous weapon (including a firearm) was possessed" while smuggling, transporting, or harboring an unlawful alien, the defendant's offense level is "increase[d] by

No. 24-50495

2 levels, but if the resulting offense level is less than level 18, increase[d] to level 18." This enhancement can apply either through the defendant's own possession of a firearm or through the relevant conduct of a coconspirator pursuant to U.S.S.G. § 1B1.3. *See United States v. Beltran Mondragon*, No. 23-40496, 2024 WL 2861853, at *1 (5th Cir. June 6, 2024) (per curiam). When an enhancement is applied based on the relevant conduct of a coconspirator, the district court "must make particularized findings"[1] that the coconspirator's actions were: "(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity."[2] "[T]he Government has the burden to prove, by a preponderance of the evidence, the facts which are necessary to support the enhancement." *United States v. Olivares*, 833 F.3d 450, 452 (5th Cir. 2016) (per curiam).

The district court applied the U.S.S.G. § 2L1.1(b)(5)(C) enhancement based on Cisneros' possession of a firearm. Because Torrijos-Ruiz did not object to the application of this enhancement in the district court, our review is for plain error. *See United States v. Benavides*, No. 21-40843, 2022 WL 2101521, at *1 (5th Cir. June 10, 2022) (per curiam) (citing *United States v. Medina-Anicacio*, 325 F.3d 638, 643 (5th Cir. 2003)). Under plain error review, Torrijos-Ruiz must establish: "(1) there is an error, (2) that is clear and obvious, and (3) that affects his substantial rights." *United States v. Marek*, 238 F.3d 310, 315 (5th Cir. 2001) (en banc). If he makes this showing, "we may exercise our discretion to correct the error . . . if the error 'seriously affects the fairness, integrity, or public reputation of judicial

---

[1] *United States v. Hull*, 160 F.3d 265, 269 (5th Cir. 1998).

[2] U.S.S.G. § 1B1.3(a)(1)(B).

proceedings.'" *United States v. McCall*, 553 F.3d 821, 826 (5th Cir. 2008) (citation omitted).

The parties agree that it was plain error for the district court to apply the enhancement and that the district court's error warrants an exercise of our discretion. Specifically, the government acknowledges that the district court offered no explanation as to why Cisneros' possession of the firearm was reasonably foreseeable to Torrijos-Ruiz, nor did the record speak to the issue of foreseeability.

We also agree that there were insufficient factual findings for the district court to apply this enhancement. The factual basis and the PSR describe how Cisneros, while transporting the illegal aliens, admitted to the border patrol agent that he had a handgun in the center console of his vehicle and that the agent confiscated the handgun and ammunition. The indictment further contains a forfeiture count for the handgun, magazine, ammunition, and firearm accessories, and at sentencing, the district court ordered forfeiture of whatever rights Torrijos-Ruiz had in these items. These facts possibly support a finding that Cisneros' possession of the firearm was within the scope of their conspiracy to transport illegal aliens and in furtherance of that conspiracy, as Cisneros possessed the firearm while transporting the aliens. *United States v. Stubblefield*, No. 22-50217, 2023 WL 2366601, at *1 (5th Cir. Mar. 6, 2023) (per curiam) (analyzing whether "the district court's rationale for its relevant conduct determination is . . . implicit in its adoption of the presentence report" based on whether the presentence report made "factual findings that would allow making Stubblefield accountable for jointly undertaken criminal activity").

But there are certainly no facts establishing that Cisneros' possession of the firearm was reasonably foreseeable to Torrijos-Ruiz. *See Beltran Mondragon*, 2024 WL 2861853, at *1 (finding that it was reasonably

foreseeable to the defendant that his coconspirator would discharge a firearm in the course of their conspiracy transporting illegal aliens where "the presentence report described Beltran Mondragon's frequent work as a scout for the illegal alien transportation operation, as well as his coconspirator's longstanding role as the caretaker of the illegally transported aliens and associated use of firearms on multiple occasions"); *United States v. DeLeon*, 484 F. App'x 920, 934 (5th Cir. 2012) (per curiam) (finding reasonable foreseeability that a firearm would be used by the defendant's coconspirator where the firearm was procured by the defendant's brother and was found in a stash house directly tied to the defendant himself). For instance, there are no facts showing that Torrijos-Ruiz and Cisneros discussed Cisneros' possession of weapon, nor are there any facts showing that they had an established relationship where Torrijos-Ruiz would have expected Cisneros to carry a weapon. Accordingly, application of this enhancement without the requisite factual findings of foreseeability was plain and obvious error.

Further, this error affected Torrijos-Ruiz's substantial rights. In demonstrating that an error affected a defendant's substantial rights, the defendant must show that the error was: "prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). "This can be done by demonstrating 'a reasonable probability that, but for the district court's misapplication of the Guidelines, he would have received a lesser sentence.'" *United States v. Brown*, 826 F.3d 835, 838 (5th Cir. 2016) (citation omitted). Here, Torrijos-Ruiz's total offense level was 21, which with a criminal history category of II amounted to a Guidelines sentencing range of 41 to 51 months. He was ultimately sentenced to 48 months. But if the 2-level enhancement for firearm possession had not applied, his total offense level would have been 19, which

would have amounted to a Guidelines range of 33 to 41 months.[3] As there is no indication the district court would have imposed a sentence of 48 months regardless of the recommended Guidelines range, it is likely that the sentencing error resulted in an increased sentence. *See United States v. Neal*, 578 F.3d 270, 274 (5th Cir. 2009).

Lastly, the error warrants an exercise of the Court's discretion. "In sentencing cases, 'the Supreme Court "expects relief to ordinarily be available to defendants"' if the first three plain-error elements are met." *United States v. Parra*, 111 F.4th 651, 663 (5th Cir. 2024) (citation omitted). Provided there are "'no "countervailing factors" that might make it an exception to th[is] rule,' we will exercise our discretion to remedy the error." *Id.* (citation omitted). Here, the error likely increased Torrijos-Ruiz's sentence by at least 7 months. This Court has exercised its discretion in cases where the error had a similar impact on the defendant's sentence. *See United States v. Marroquin*, 884 F.3d 298, 301 (5th Cir. 2018) (exercising discretion to correct a sentencing error that imposed a sentence four months above the correct Guidelines range). We also do so here.

### B. U.S.S.G. § 3E1.1 Reduction for Acceptance of Responsibility

The parties disagree as to whether the district court erred in denying Torrijos-Ruiz a sentencing reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

U.S.S.G. § 3E1.1 provides: "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." The defendant bears the burden of demonstrating entitlement to the reduction, and the district court is afforded great deference in determining

---

[3] U.S.S.G. Ch.5, Pt. A (2024).

whether the defendant met his burden. *United States v. Flucas*, 99 F.3d 177, 180 (5th Cir. 1996) (per curiam). "The court of appeals will affirm the denial of a reduction for acceptance of responsibility unless it is 'without foundation, a standard of review more deferential than the clearly erroneous standard.'" *United States v. Lord*, 915 F.3d 1009, 1017 (5th Cir. 2019) (citation omitted).

The defendant is not entitled to a reduction for acceptance of responsibility simply because he enters a guilty plea. U.S.S.G. § 3E1.1 cmt. n. 3; *see also United States v. Diaz*, 39 F.3d 568, 571 (5th Cir. 1994). The entry of a guilty plea is a *factor* in determining whether the defendant has accepted responsibility. *See United States v. Harris*, 304 F. App'x 270, 272 (5th Cir. 2008) (per curiam) (citing U.S.S.G. § 3E1.1 cmt. n. 3). But the ultimate question is whether the defendant has exhibited "'sincere contrition' regarding the *full extent* of . . . criminal conduct." *Diaz*, 39 F.3d at 572 (citation omitted). Thus, "[a] defendant's attempt to minimize or deny involvement in an offense," along with a defendant's "[c]oyness and lack of candor," supports a district court's decision to deny the reduction. *United States v. Bello*, No. 93-2228, 1994 WL 14113, at *1 (5th Cir. Jan. 5, 1994) (per curiam); *see also United States v. Perez*, 915 F.2d 947, 950 (5th Cir. 1990) (per curiam) (affirming the district court's denial of the acceptance-of-responsibility reduction where the defendant acknowledged the "basic factual elements" of the drug conspiracy offense but his "explanation of his overall offense conduct [was] that his brother . . . called him to help . . . move some boxes," artfully omitting that he knew those boxes contained materials for manufacturing methamphetamine).

Here, the district court acknowledged that Torrijos-Ruiz was honest with agents about his role in the conspiracy, as evidenced by the stipulated factual basis for his guilty plea. But the district court faulted Torrijos-Ruiz for minimizing his role during his presentence interview with probation, finding

that in that interview Torrijos-Ruiz claimed he was merely a part of the group coming into work rather than the main guide for the group. The district court also adopted the PSR's legal and factual findings, which stated that Torrijos-Ruiz did not reference his participation with others during his presentence interview.

When a defendant provides inconsistent or contradictory statements in the presentence interview compared to statements he agrees to as a part of the factual resume, panels of this court have affirmed a district court's finding that the defendant did not accept responsibility. *See United States v. Lopez*, 371 F. App'x 461, 461 (5th Cir. 2010) (per curiam); *see also United States v. Dean*, 521 F. App'x 332, 333 (5th Cir. 2013) (per curiam) (affirming denial of the acceptance-of-responsibility reduction where the defendant agreed in his factual basis that he owned a stolen firearm but subsequently denied any knowledge of the gun in his presentence interview); *United States v. Loma*, 592 F. App'x 329, 330 (5th Cir. 2015) (per curiam) (concluding that while the defendant admitted his role in a drug conspiracy in his factual resume, he attempted to minimize his role in his presentence interview by "diminishing the time period that he was involved in the conspiracy and by maintaining that the ledger found in his house was used in his construction business rather than to keep records of drug sales").

Further, panels have upheld a district court's denial of the acceptance-of-responsibility reduction when the defendant "failed to elaborate on the circumstances surrounding the offense to the probation officer" during the presentence interview. *United States v. Nevarez-Arreola*, 885 F.2d 243, 246 (5th Cir. 1989) (per curiam) (affirming the denial of the acceptance-of-responsibility reduction, in part because the defendant failed to elaborate on the facts of the offense in the presentence interview); *see also United States v. Barrera*, No. 23-50043, 2024 WL 957480, at *2-3 (5th Cir. Mar. 6, 2024) (per curiam) (affirming the denial of the acceptance-of-

responsibility reduction where the defendant agreed to both receiving and distributing child pornography as a part of his factual resume but only discussed receipt in the presentence interview). *But see Barrera*, 2024 WL 957480, at *5 (King, J., dissenting) (cautioning against imposing a rule where "a defendant's truthful admission of 'the conduct comprising the offense of conviction' only counts if it is done at a presentence interview" (citation omitted)).

It is a close call as to whether Torrijos-Ruiz's statements to the probation officer were inconsistent with, or a minimization of, the facts he agreed to as a part of his factual resume. On one hand, Torrijos-Ruiz did not explicitly say in his presentence interview that he was a "guide" who had been given instructions on what to do and that he was working with his brother and Cisneros. His presentence interview statement also arguably paints him as a mere participant in the group, as he states that they all "decided to cross together" and implies that he made the call because he had the cellphone.

But on the other hand, Torrijos-Ruiz does apologize for "bringing in the people with [him]." By acknowledging that he brought the group into the United States, he arguably acknowledges a leadership role. He also references the original smuggler whom he was presumably working with, which is a reference to participation with others.

Both interpretations of Torrijos-Ruiz's presentence statements are plausible. A reasonable sentencing judge could decide either to impose the acceptance-of-responsibility reduction or to deny it based on these facts. However, ultimately, our inquiry is whether the district court's determination that Torrijos-Ruiz did not accept responsibility was "without foundation." The question is not whether we would have made a different determination if we had been in the district court's shoes. *See United States*

*v. Pond*, No. 21-51232, 2023 WL 2240459, at *4 (5th Cir. Feb. 27, 2023) (per curiam). Under this deferential standard of review, the district court did not err in denying Torrijos-Ruiz an acceptance-of-responsibility reduction.

### C. Conflict Between the Written Judgment and Oral Sentencing Pronouncement

"'[W]hen a defendant appeals a court's failure to pronounce a condition that later appears in the judgment,' the standard of review is abuse of discretion." *United States v. Pelayo-Zamarripa*, 81 F.4th 456, 459 (5th Cir. 2023) (quoting *United States v. Diggles*, 957 F.3d 551, 559 (5th Cir. 2020)). "A district court abuses its discretion in imposing a [discretionary] condition of supervised release if the condition in its written judgment conflicts with the condition as stated during its oral pronouncement." *Id.* (citation omitted). In that case, the requirement that the district court imposed in the oral pronouncement controls. *Diggles*, 957 F.3d at 557. "[N]ot all unpronounced [discretionary] conditions arise to the level of an actual conflict." *Pelayo-Zamarripa*, 81 F.4th at 459-60. Rather, the key to determining whether there is an actual conflict is ascertaining if "the written judgment broadens the restrictions or requirements of supervised release, or impos[es] a more burdensome requirement than that of the oral pronouncement." *Id.* at 460 (citation omitted).

The parties agree that there is a conflict between a discretionary condition imposed in the oral pronouncement compared to the written judgment. Specifically, they explain that the district court orally pronounced that "while on supervised release, [Torrijos-Ruiz] shall comply with all the conditions of supervision adopted by the Court in November of 2016." The Western District of Texas' standing order, in relevant part, requires a defendant to obtain permission from a "probation officer" prior to

communicating with a known felon.[4] But the written judgment requires Torrijos-Ruiz to obtain permission from the "Court" prior to communicating with a known felon.

The parties are correct. First, this is a discretionary condition under the supervised release statute. *See* 18 U.S.C. § 3583(d). Second, as explained by two panels of this Court when evaluating this exact situation, there is a conflict. *See United States v. Alcaraz-Juarez*, No. 23-50801, 2024 WL 4948845, at *3 (5th Cir. Dec. 3, 2024) (per curiam); *United States v. Orozco-Rangel*, No. 23-50587, 2024 WL 3688723, at *2 (5th Cir. Aug. 7, 2024) (per curiam). As those panels explained, requiring a defendant to seek leave of the Court, rather than asking his probation officer, imposes a more burdensome requirement. *See Alcaraz-Juarez*, 2024 WL 4948845, at *3; *Orozco-Rangel*, 2024 WL 3688723, at *2. This is because "[t]he written judgment requires [Torrijos-Ruiz], during the three years of SR, to draft and file a motion with the district court (and pay the associated fees) every time he wants to communicate with a felon[.] . . . The oral pronouncement, in contrast, only required him to contact his probation officer, a more informal process." *Orozco-Rangel*, 2024 WL 3688723, at *2. Therefore, the district court abused its discretion, and the oral pronouncement controls.

### D. Judgment Referencing the Generic Immigration Statute

Lastly, the parties agree that we should remand to the district court to amend the written judgment so that it reflects the specific subsections of the statute of conviction. The written judgment currently states that Torrijos-Ruiz was convicted under 8 U.S.C. § 1324, the generic statute for bringing in

---

[4] United States District Court for the Western District of Texas, *Conditions of Probation and Supervised Release*, (Nov. 28, 2016), https://www.txwd.uscourts.gov/wp-content/uploads/2022/12/Conditions-of-Probation-and-Supervised-Release.pdf.

and harboring illegal aliens. However, the indictment charges Torrijos-Ruiz with violating 8 U.S.C. § 1324(a)(1)(A)(v)(I) & (B)(i), and Torrijos-Ruiz pleaded guilty to those statutory provisions. The PSR, which the district court adopted, further referenced 8 U.S.C. § 1324(a)(1)(A)(v)(I) & (B)(i) as the statutory provisions of conviction.

"[O]ur court has repeatedly remanded for the limited purpose of specifying the precise sections or subsections of conviction." *Orozco-Rangel*, 2024 WL 3688723, at *2 (citing *United States v. Huerta-Rodriguez*, 64 F.4th 270, 272-73 (5th Cir. 2023) (remanding where the judgment reflected that the defendant was convicted under 8 U.S.C § 1326, when he was actually convicted under 8 U.S.C. § 1326(b)(2))). It is not clear that any showing of harm is even required. *Alcaraz-Juarez*, 2024 WL 4948845, at *3 & n.6. As the panel explained in *Alcaraz-Juaraz*, the plain language of Federal Rule of Criminal Procedure 36 allows for correction of a clerical error without any showing of harm, and it does not appear that any of our previous opinions have required it. *Id.* at *3 n.6 (collecting cases where this Court remanded for correction of a clerical error without a discussion of harm). Rather, the sheer "importance of an *accurate* written judgment" cannot be understated. *Id.*

But regardless, this Court has explained that these errors can lead to "collateral consequences." *Huerta-Rodriguez*, 64 F.4th at 276. For instance, "[t]he sentencing court's written judgment sets in motion and influences a host of decisions made for the defendant once committed to the custody of the Bureau of Prisons (BOP)." *Alcaraz-Juarez*, 2024 WL 4948845, at *3 n.6. As "the judgment serves as the primary document to which the BOP refers in administering the sentence imposed," an inaccurate written judgment can have real effect on the defendant's sentence. *Id.* Accordingly, as there is an obvious clerical error in the written judgment, reformation of the written judgment is appropriate.

## III.

For the reasons provided above, we AFFIRM the district court's denial of the U.S.S.G. § 3E1.1 acceptance-of-responsibility reduction, VACATE the sentence as to the U.S.S.G. § 2L1.1(b)(5)(C) enhancement for possessing a firearm while transporting an illegal alien, and REMAND for resentencing and reformation of the written judgment. If on remand the district court determines that the enhancement for possessing a firearm while transporting illegal aliens is appropriate pursuant to U.S.S.G. § 1B1.3(a)(1)(B), "it should provide the required factual findings supporting its decision." *Stubblefield*, 2023 WL 2366601, at *1. The written judgment should be reformed to reflect the oral pronouncement as to the terms of supervised release and to reflect the correct statutory subsections of conviction.