# United States Court of Appeals
## for the Fifth Circuit

_____

No. 22-50611

_____

United States Court of Appeals
Fifth Circuit

**FILED**
June 1, 2023

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ROBINSON MENDOZA-GOMEZ,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:22-CR-52-1

_____

Before WIENER, SOUTHWICK, and DUNCAN, *Circuit Judges*.

JACQUES L. WIENER, JR., *Circuit Judge*:

Defendant-Appellant Robinson Mendoza-Gomez ("Mendoza") entered a guilty plea to assaulting, resisting, or impeding various officers or employees, in violation of 18 U.S.C. § 111(a)(1) and (b). Mendoza appeals the district court's application of a two-level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1 (U.S. SENT'G COMM'N 2018). For the following reasons, we affirm Mendoza's sentence.

No. 22-50611

## I.   FACTS AND PROCEEDINGS

On or about December 14, 2021, U.S. Border Patrol agents observed approximately eleven suspected undocumented aliens walking north through the desert near Highway 90, at a location near Van Horn, Texas. Those agents responded to the area and detained several of the aliens, but a group of four escaped and began fleeing in another direction. A few minutes later, U.S. Border Patrol agent Valles made contact with the group and attempted to apprehend one of the suspected illegal aliens, later identified as Mendoza's brother. As agent Valles was attempting to apprehend Mendoza's brother, a second subject, later identified as Mendoza, stopped fleeing, turned around, and ran towards agent Valles. As Mendoza ran towards agent Valles, he yelled out "dejalo ir hijo de la chingada," which translates to "let him go you son of a bitch."

Mendoza then tackled agent Valles and began striking him in the face and head, causing him to fall to the ground. While agent Valles was on the ground, Mendoza continued to strike him. Agent Valles then used his flashlight in self-defense, striking Mendoza twice in the head. As the attack continued, agent Valles dropped his flashlight to protect his head and face from the assault. Agent Valles then felt Mendoza's hands drop towards the agent's gun belt, causing him to roll towards his service weapon on his right side and to continue defending himself with his left hand. Agent Valles then pulled his service weapon and commanded Mendoza in Spanish to get off or he (Valles) would shoot Mendoza. At this time, two more U.S. Border Patrol agents arrived at the scene to assist agent Valles and were able to pull Mendoza off of him. Mendoza, however, ignored the commands from the agents and continued to resist. Eventually, Mendoza began to yell "ya ya"

2

which translates to "ok ok," finally allowing agents to place him under arrest without further incident.

The presentence report ("PSR") calculated Mendoza's base offense level as 10. The PSR applied a three-level increase pursuant to U.S.S.G. § 2A2.4(b)(1) for an offense involving physical contact, plus (1) a two-level increase under U.S.S.G. § 2A2.4(b)(2) because the victim sustained bodily injury and (2) a two-level increase under U.S.S.G. § 3C1.1 for obstruction of justice. The PSR also included a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). The result was a total offense level of 14. With a criminal history category of I, the PSR determined that Mendoza's Sentencing Guidelines range was fifteen to twenty-one months of imprisonment. Mendoza filed an objection to the PSR, specifically related to the application of the two-level enhancement for obstruction of justice.

At sentencing, Mendoza's counsel again objected to the two-level enhancement for obstruction of justice under § 3C1.1. Mendoza's attorney contended that Mendoza's conduct did not constitute obstruction of justice; that this enhancement should not apply automatically, simply because Mendoza assaulted a federal officer; and that the application of this enhancement constituted impermissible double counting. The district court overruled those objections, relying on the government's statements and the response of the probation officer. After considering and weighing the sentencing factors under 18 U.S.C. § 3553(a), the district court sentenced Mendoza to twenty-one months imprisonment. Mendoza timely filed a notice of appeal. Fed. R. App. P. 4(b)(1)(A)(i).

Mendoza contends on appeal that that the district court clearly erred in applying a two-level enhancement under § 3C1.1. Mendoza asserts that the imposition of the enhancement for obstruction of justice was erroneous because he did not obstruct the investigation, prosecution, or sentencing of

his offense of conviction. He also claims that assaulting an officer to evade arrest is not the type of conduct to which § 3C1.1 is meant to apply. Mendoza finally contends that the application of U.S.S.G. § 2A2.4(a) to determine his base offense level and the enhancement under § 3C1.1 constituted impermissible double counting, but he concedes that such a contention is foreclosed by this circuit's precedent.[1]

The government insists that the district court plausibly found that Mendoza impeded the administration of justice when, after he fled into the desert, he returned to the scene to assault the border patrol agent who was attempting to arrest his brother. The government contends that Mendoza obstructed justice twice: first, when he impeded the arrest and administration of justice of his brother; then when he resisted his own apprehension, thus delaying his arrest. The government asserts that any potential sentencing error was harmless because Mendoza's conduct also warranted a two-level enhancement under U.S.S.G. § 3C1.2 for recklessly creating a substantial risk of death or serious bodily harm to another while fleeing from law enforcement.

## II.   STANDARD OF REVIEW

This court reviews the district court's interpretation and application of the Sentencing Guidelines *de novo* and its factual determination that Mendoza obstructed justice for clear error. *United States v. Greer*, 158 F.3d 228, 233 (5th Cir. 1998); *see also United States v. Wright*, 496 F.3d 371, 374 (5th Cir. 2007). There is no clear error if a factual finding is plausible in light

---

[1] The Fifth Circuit has held that "double counting is prohibited only if the particular guidelines at issue specifically prohibit it." *United States v. Johnson*, 990 F.3d 392, 403 (5th Cir. 2021). Mendoza "concedes that neither U.S.S.G. § 2A2.4 nor U.S.S.G. § 3C1.1 explicitly prohibits the application of both." We shall therefore not address that argument here.

of the record as a whole. *United States v. Castro*, 843 F.3d 608, 612 (5th Cir. 2016). This court "will conclude that a finding of fact is clearly erroneous only if a review of all the evidence leaves [the court] with the definite and firm conviction that a mistake has been committed." *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011) (internal citation omitted).

### III.    Law and Analysis

Under § 3C1.1 of the Sentencing Guidelines, a defendant's offense level is increased by two levels if he or she (1) "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." U.S.S.G. § 3C1.1. To determine whether an enhancement applies, "courts must evaluate the acts or omissions of the defendant that occurred during the commission of the offense, the preparation for the offense of conviction, or the course of attempting to avoid detection or responsibility for the offense of conviction." *United States v. Southerland*, 405 F.3d 263, 267 (5th Cir. 2005) (internal citation omitted).

Here, Mendoza contends that the application of § 3C1.1 was erroneous because (1) he did not impede or obstruct the administration of justice and (2) assaulting an officer to evade arrest is not the type of conduct targeted by § 3C1.1. Mendoza does not dispute the factual findings proposed by the PSR, which were adopted by the district court. He even concedes that the purpose of his assault was to "obstruct his brother's and his detention for an immigration inspection." He points out, however, that he was not charged with any other crime and that he "could not possibly have obstructed the investigation of the very act that was occurring." Mendoza contends that when "the acts comprising the assault constitute the totality of the offense,

the offense level as determined in guidelines chapter 2 adequately captures the extent of the offense." In other words, he claims that the base level offense under 18 U.S.C. § 111(a)(1) and (b) already factors in the act of obstructing or impeding a federal officer.

The district court overruled Mendoza's objection at sentencing for the reasons expressed by the government and by the U.S. Probation Officer in the presentencing report ("PSR"). During the proceedings, the government contended that Mendoza obstructed justice "by absconding while the agents were searching for him" and "while they were apprehending his brother." The government asserted that, although 18 U.S.C. § 111(a)(1) includes the word "impede," it also includes the word "assault," and Mendoza's offense was assaultive in nature. The government therefore claimed that the obstruction of justice enhancement is not duplicative of, but is instead sufficiently related to, Mendoza's "instant offense." The PSR states that an enhancement is warranted because "[t]he defendant tackled and continuously struck the USBP agent that was attempting to arrest an individual who had fled from law enforcement officers."

On appeal, the government restates these contentions and clarifies that Mendoza obstructed justice (1) when he resisted his own arrest and (2) when he impeded the arrest of, and the administration of justice to his brother. The government asserts that the district court, in applying the enhancement, properly considered Mendoza's obstructive conduct relating to his uncharged offense of illegal entry, as well as his brother's offense of illegal entry. Each of these theories, which the district court adopted during sentencing, is examined below.

## A. *Did Mendoza obstruct justice by impeding his own arrest?*

We turn first to whether Mendoza could have obstructed his own arrest with conduct leading up to and during his arrest, which included

fleeing from the U.S. Border Patrol, running back and yelling—in Spanish—"let him go you son of a bitch," and assaulting agent Valles. Neither § 3C1.1 nor its commentary specifies whether an arrest may be considered the "investigation," "prosecution," or "administration of justice" of the instant offense of conviction. U.S.S.G. § 3C1.1. In *United States v. Chavarria*, however, we took the position that an arrest "is an event that occurs during the investigation and prosecution of a case" and is thus "part of the administration of justice as to that case." 377 F.3d 475, 479 (5th Cir. 2004), *judgment vacated on other grounds by*, 543 U.S. 1111 (2005), *judgment reinstated*, 162 F. App'x 306 (5th Cir. 2006). In doing so, we affirmed a § 3C1.1 enhancement based on conduct that occurred while the defendant was being arrested. *Id.* It is therefore temporally possible for § 3C1.1 to apply both to conduct leading up to and during Mendoza's arrest, because the arrest was part of the administration of justice in Mendoza's case.

We next consider whether the conduct leading up to and during Mendoza's arrest is the type of conduct contemplated by § 3C1.1. The § 3C1.1 commentary explains that obstructive conduct may warrant an enhancement "if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." U.S.S.G. § 3C1.1, cmt. n.1. Mendoza insists that § 3C1.1 is inappropriate here because his conduct was spontaneous and thus lacked premeditation. It is true that a § 3C1.1 enhancement typically involves "egregiously wrongful behavior whose execution requires *a significant amount of planning* and presents an inherently high risk that justice will in fact be obstructed." *Greer*, 158 F.3d at 235 (emphasis added). In *United States v. Greer*, we distinguished decisions "made on the spur of the moment and reflect panic, confusion, or mistake" from "deliberate attempt[s] to obstruct justice." *Id.* at 235. Note 4 to § 3C1.1's commentary provides a non-exhaustive list of

examples of the types of conduct to which such an enhancement applies, and impeding an arrest is not included. U.S.S.G. § 3C1.1 cmt. n. 4.

The commentary to § 3C1.1 provides, however, that "obstructive conduct can vary widely in nature, degree of planning, and seriousness." U.S.S.G. § 3C1.1 cmt. n.3. Our recent precedent instructs district courts to focus on the intent underlying the obstructive conduct. For example, in *Chavarria*, we held that a defendant who verbally threatened a police officer with violence during his own arrest was subject to § 3C1.1. 377 F.3d at 480. We explained that this enhancement will apply "if a threat is made with the specific intent of obstructing or impeding the administration of justice in the case in which the arrest was made." *Id.* We held that, in light of the defendant's references to his gang affiliation and his history of violent conduct, it was reasonable for the district court to infer that the defendant's threats were intended to obstruct or impede the administration of justice. *Id.* at 479–80.

Here, it is helpful to think of Mendoza's conduct in three parts: (1) his flight from the U.S. Border Patrol, (2) his return to the scene with oral threats to agent Valles; and (3) his tackling and continued striking of agent Valles. Given our precedent and § 3C1.1's commentary that "avoiding or fleeing from arrest" does not usually warrant the application of § 3C1.1, Mendoza's flight from the U.S. Border Patrol cannot be considered obstructive conduct under § 3C1.1. U.S.S.G. § 3C1.1, cmt. n.5(D). Instead, Mendoza's flight was a "spur of the moment" decision that "reflect[ed] panic." *Greer*, 158 F.3d at 235. Categorizing Parts 2 and 3 of Mendoza's conduct is less straightforward.

As explained above, it is possible for a defendant to obstruct a defendant's own arrest as long as he or she "had the specific intent of obstructing the administration of justice in the case in which the arrest was made." *Chavarria*, 377 F.3d at 480. However, unlike the defendant in

*Chavarria*, the shouting of "let him go you son of a bitch," in Spanish, does not relate to Mendoza's imminent arrest—only to his brother's. The district court did not address this theory in depth at the sentencing, only "agree[ing] with the Government with the response of the U.S. Probation Officer." Neither the government nor Mendoza's counsel explored this issue during sentencing. Moreover, the PSR states that the enhancement was based on Mendoza's tackling and prolonged assault of agent Valles in an effort to impede Mendoza's brother's arrest—not Mendoza's. Accordingly, the record does not show that Mendoza specifically intended to obstruct his own arrest, and we cannot affirm the application of § 3C1.1 on that ground. However, we may affirm Mendoza's sentence on an alternative ground, as we explain below.

**B.  *Did Mendoza obstruct justice by impeding his brother's arrest?***

This case also poses the question whether a court may apply § 3C1.1 when a defendant obstructs *another person's* arrest, which in this case is that of Mendoza's brother. In other words, we must determine whether § 3C1.1 applies when the obstructive act is not alleged to pertain to the defendant's own "instant offense" of conviction—in this case, assaulting a federal officer, per 18 U.S.C. § 111(a)(1) and (b).

Section 3C1.1 originally stated that the enhancement applied if a defendant "willfully obstructed or impeded . . . the administration of justice with respect to the investigation, prosecution, or sentencing of the **instant offense of conviction.**" U.S.S.G. § 3C1.1 (emphasis added). Before § 3C1.1 was amended, there was no conjunctive portion that followed, and a circuit conflict arose over whether § 3C1.1 applies only to acts specifically related to the offense of which the defendant was convicted or if it can also apply to conduct that obstructs a closely related offense. *See, e.g.*, *USA v. Perry*, 908 F.2d 56 (6th Cir. 1990); *USA v. Mollner*, 643 F.3d 713 (10th Cir. 2011). In

1998, the Sentencing Commission amended § 3C1.1 to resolve the circuit conflict and to clarify the meaning of "instant offense." U.S.S.G. app. C, amend. 581; *Mollner*, 643 F.3d at 716. The amendment, which adopted the majority view, adds more content to § 3C1.1 and clarifies that an obstructive act may relate either to the defendant's offense of conviction (including any relevant conduct) or to a closely related offense. *Id.* (holding that "§ 3C1.1 applies not only to the defendant's obstructive conduct involving his offense of conviction, but also to any of his obstructive conduct involving cases that are closely related to the defendant's case"); U.S.S.G. app. C, amend. 581. Section 3C1.1 now states:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction **and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense,** increase the offense level by 2 levels.

U.S.S.G. § 3C1.1 (emphasis added). The commentary to the Guidelines explains that "a closely related offense" means "an otherwise closely related case, such as that of a co-defendant." U.S.S.G. § 3C1.1, cmt. n.1. Note 1 of the commentary to § 3C1.1 was also amended in an attempt "to clarify . . . that U.S.S.G. § 3C1.1, indeed, includes a 'temporal element,'" or "*during* an investigation of the defendant's instant offense." *United States v. Clayton*, 172 F.3d 347, 355 (5th Cir. 1999) (quoting U.S.S.G. app. C, amend. 581).

Although this circuit has not yet explored a similar fact pattern under § 3C1.1, we have previously analyzed the required nexus between the conduct and the instant offense under Chapter 3 enhancements generally. In *United States v. Southerland*, we held that "in determining adjustments under Chapter Three . . . courts must evaluate the acts or omissions of the defendant that occurred during the commission of the offense, the

preparation for the offense of conviction, or 'the course of attempting to avoid detection or responsibility for' the offense of conviction." 405 F.3d 263, 267 (5th Cir. 2005) (quoting U.S.S.G. § 1B1.3(a)). In doing so, we "engage in a familiar analysis, that is, the discrimination between relevant and irrelevant conduct." *Id.* We pointed out that § 1B1.3, which defines "relevant conduct" under the Chapter 2 and 3 enhancements, "requires the connection of the enhancement not only to commission, preparation, or evasion, but also to the specific offense of conviction." *Id.* at 268 (citing U.S.S.G. § 1B1.3(a)(1)).

We now turn to whether § 3C1.1 applies when Mendoza's obstructive acts were admittedly aimed to impede his brother's apprehension and arrest. As noted above, we do not consider Mendoza's initial flight from the U.S. Border Patrol an obstructive act under § 3C1.1. Instead, we only consider Mendoza's return to the scene with verbal threats as well as his tackling and continued striking of agent Valles. Mendoza asserts that (1) he could not have obstructed the investigation of an assault that he was simultaneously committing and (2) the base offense level under 18 U.S.C. § 111(a)(1) and (b) already incorporates the act of impeding a federal officer. Although compelling, we find these contentions unavailing because, under § 1B1.3, it is proper to consider "**all acts and omissions** committed . . . during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A) (emphasis added).

When Mendoza assaulted agent Valles, he violated § 111 and triggered the base offense level in § 2A2.4. Then, when Mendoza physically prevented agent Valles from arresting another member of Mendoza's group, he obstructed the administration of justice in an offense that was closely related to his instant offense of conviction. In other words, there is a sufficient nexus between Mendoza's relevant conduct (the tackling and prolonged assault of

agent Valles intended to impede his brother's arrest) and his conviction for assault of a federal officer. It is therefore plausible, in light of the record as a whole, for the district court to have found that Mendoza's conduct is properly categorized as an obstruction of justice under § 3C1.1. We therefore conclude that the district court's application of § 3C1.1 was not clearly erroneous.

### C. *Was any error made by the district court harmless?*

The government also asserts that, in the event the district court erred, any error was harmless because Mendoza's conduct also warranted a two-level enhancement under U.S.S.G. § 3C1.2 for recklessly creating a substantial risk of death or serious bodily harm when fleeing from law enforcement. For the reasons stated above, we do not consider Mendoza's initial flight from the U.S. Border Patrol to be obstructive conduct because it did not sufficiently relate to his offense of conviction. Here, too, we conclude that a sufficient nexus is lacking between Mendoza's flight and his conviction for assault of a federal officer. Because the district court did not err in determining that Mendoza's acts of tackling and prolonged assault of agent Valles obstructed justice under § 3C1.1, we do not need to consider this argument any further.

### IV.   Conclusion

For the foregoing reasons, we AFFIRM the district court's application of a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1.