# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 15, 2024

Lyle W. Cayce
Clerk

No. 23-50100

United States of America,

*Plaintiff—Appellee*,

*versus*

Miguel Angel Ortega,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:22-CR-44-1

_____

Before Stewart, Clement, and Ho, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

Miguel Angel Ortega pled guilty to possession of child pornography. The district court applied a two-level sentencing enhancement for obstruction of justice based on a conversation that Ortega had with his wife about a letter of support that she was writing for his sentencing proceeding. Ortega appeals, arguing that the obstruction-of-justice enhancement was applied in error. We agree and therefore VACATE Ortega's sentence and REMAND for resentencing.

No. 23-50100

## I.

On January 3, 2022, Ortega's wife, Jazmine Rubio, reported her husband to the Pecos, Texas Police Department after she discovered child pornography on Ortega's phone. The police executed a search warrant on the phone the next day, which revealed photos and videos of children engaged in sex acts in Ortega's Google Pictures account. Ortega told officers that he purchased links for hundreds of pornographic videos from a stranger on the online chatroom app Discord while under the influence of methamphetamine. Ortega ultimately admitted to viewing approximately fifty pornographic videos or images involving children ranging from age six to sixteen. He was indicted shortly thereafter.

Although she had initially reported him to the police, Rubio later decided to support Ortega.[1] Rubio told Ortega's attorney that she believed that Ortega received the child pornography by mistake and that the police officers deleted one of Ortega's accounts that contained "messages to prove his innocence."

Ortega pled guilty on July 27, 2022. In advance of Ortega's October 24 sentencing hearing, Rubio collected "character letters" in support of Ortega and was preparing a statement that she planned to read in court.[2]

---

[1] Rubio and Ortega have a child together, and Rubio has two children from a previous relationship to whom Ortega is a "father figure."

[2] In April 2022, before Ortega pled guilty, Rubio drafted a character letter in support of Ortega. Ortega's attorney did not submit it at the time, but later attached it as an exhibit during Ortega's sentencing proceeding.

No. 23-50100

On October 8, 2022, Rubio visited Ortega in jail and the two discussed what Rubio would say in support of Ortega at the sentencing hearing.[3] Their conversation, which was recorded, proceeded, in relevant part, as follows:

> Ortega: Have you started working on that letter yet?
>
> Rubio: Yeah, it's just that I don't know how to start it off . . .
>
> Ortega: What do you mean?
>
> Rubio: Like, I don't know how to start it off. I just put that I wanted to speak today. What do I say after that? Or?
>
> Ortega: Say you wanted to speak today because . . . you wanted to make sure the judge knows that this is out of character. This is not something that I do. It's just the drugs had a very . . . bad influence on my life and I just made the wrong decision. I don't know, something like that, that you think that I need, like, treatment and that . . . if he could show me some type of leniency, so that I could come home with my kids . . . say, like you understand the sever[ity] of the charge, but my issue is not what I am being charged with. My issue is the drugs. Like, that I don't remember, like, that it is just not something that I was doing. I don't know, just something like that, but like, in your own words, I guess. Like, and I want you to, like, make sure, like you put in there that I did tell somebody about it, like, when my mind was clear headed. Like, I told somebody, that, you know,

---

[3] Although Ortega referred to Rubio's "letter" in their conversation, Rubio wrote her letter of support that was submitted to the court during sentencing months earlier. So, given the context, their conversation is better understood as discussing the statement of support that Rubio was planning on delivering in court.

No. 23-50100

> that I erased it. That I didn't know it was still on
> my phone . . .

On October 14, 2022, the probation officer submitted a presentencing report that calculated Ortega's total offense level as 28, including a three-level decrease for acceptance of responsibility, and his criminal history category as III, resulting in an advisory guidelines range of 97 to 121 months' imprisonment. The probation officer determined that there was no indication that Ortega had obstructed justice. But when the parties convened for sentencing on October 24, 2022, the government told the district court that Ortega had "been trying to coerce his family members to make statements for him to get a lesser sentence." The court therefore postponed the sentencing.

After reviewing the recordings of Ortega's jailhouse conversations, the probation officer submitted a revised presentencing report that recommended a total offense level of 33 and criminal history category of IV, resulting in an advisory guideline sentencing range of 188 to 235 months' imprisonment. The five-level increase in total offense level was a result of a two-level enhancement for obstruction of justice based on the recorded conversation between Ortega and his wife and the retraction of the three-level decrease for acceptance of responsibility based, in part, on an unrelated recorded phone conversation between Ortega and an unknown man. The probation officer stated that the obstruction-of-justice enhancement was warranted under Section 3C1.1 of the Sentencing Guidelines because Ortega "instruct[ed] his wife . . . what to write in her letter to the Court." The probation officer specifically cited to the point in the conversation at which Ortega "[told] Rubio to include his actions were out of character, and also instruct[ed] her to write his problem [was] not the instant offense, but his problem [was] with drug use."

No. 23-50100

Ortega objected to the obstruction enhancement, lack of adjustment for acceptance of responsibility, and increased criminal history category in the revised presentencing report. With respect to the obstruction-of-justice enhancement, Ortega argued that it was not warranted because he had not urged his wife to provide false or misleading information, but instead made "suggestions" and told Rubio to use "her own words." The probation officer countered that Ortega "[told] his wife what to specifically include in her letter."

At the sentencing hearing, the district court overruled Ortega's objections concerning the obstruction-of-justice enhancement and acceptance-of-responsibility adjustment but sustained Ortega's objection to the calculation of his criminal history category, resulting in a revised guidelines range of 168 to 210 months of imprisonment. The district court adopted the presentencing report, as amended.

Both Ortega and Rubio then had the opportunity to speak. Ortega admitted that he "messed up" and acknowledged he had a problem with drugs. Rubio, for her part, stated that she did not believe that Ortega was a danger to her children and asked for leniency so that he would not miss his kids' childhood. She also stated that Ortega's drug use "impair[ed] his judgment" and that his "problem really [was] drug use."

The district court imposed a top-of-the-guidelines sentence of 210 months of imprisonment and fifteen years of supervised release. Ortega appeals only the application of the obstruction-of-justice enhancement.

## II.

We review the district court's application of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v. Greer*, 158 F.3d 228, 233 (5th Cir. 1998). "A ruling that [factual] findings permit an obstruction-of-justice enhancement is a question of law, reviewed

5

No. 23-50100

*de novo.*" *United States v. Miller*, 607 F.3d 144, 148 (5th Cir. 2010) (citation and quotation marks omitted).[4] The burden is on the government to show by a preponderance of the evidence the facts necessary to support an enhancement. *United States v. Abrego*, 997 F.3d 309, 312 (5th Cir. 2021).

III.

An obstruction-of-justice enhancement applies where:

(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense.

U.S.S.G. § 3C1.1. The Guidelines' commentary provides non-exhaustive lists of examples of the types of conduct to which the obstruction-of-justice enhancement does and does not apply. U.S.S.G. § 3C1.1 cmt. nn.4–5; *see also United States v. Mendoza-Gomez*, 69 F.4th 273, 278 (5th Cir. 2023) (noting that lists are "non-exhaustive"). The examples of obstructive conduct are all "egregiously wrongful behavior whose execution requires a significant amount of planning and presents an inherently high risk that justice will in fact be obstructed." *Greer*, 158 F.3d at 235. Among this list is "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1 cmt.

---

[4] The government claims that Ortega's asserted error is a factual determination reviewed for clear error. But the facts were not disputed before the district court. Indeed, the conversation between Ortega and Rubio was recorded. And where, as here, an appellant "does not dispute the facts found by the district court, but contends the district court erred in its interpretation of the guidelines and its application of factual findings to [an] enhancement . . . our review of the application of the guidelines is *de novo*." *United States v. Torres*, 601 F.3d 303, 305 (5th Cir. 2010).

n.4. The Guidelines' examples of non-obstructive conduct, by contrast, "while dishonest, carry little risk of significantly impeding the investigation or prosecution of a case and require substantially less planning." *Greer*, 158 F.3d at 235. When determining whether the enhancement applies to conduct not expressly listed in the commentary, we compare it to the types of conduct listed in the examples provided by the Guidelines. *Id.* at 234–36.

The government makes two arguments about why the obstruction-of-justice enhancement applies: (1) Ortega directed Rubio to say that Ortega's conduct was a result of drug addiction even though she lacked personal knowledge of such drug use; and (2) Ortega tried to influence Rubio's testimony to align with his.

As to its first argument, the government never alleged that Rubio lacked knowledge of Ortega's drug use before the district court, so the argument is likely forfeited. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal."). But even if the government had raised the issue below, it did not meet its burden of proving it was more probable than not that Rubio was unaware of her husband's drug use. *See United States v. Wilson*, 322 F.3d 353, 361 (5th Cir. 2003). The presentencing report outlines Ortega's extensive drug use during his marriage, including abuse of alcohol, cocaine, methamphetamine, synthetic heroine, and fentanyl. Indeed, several months after Rubio and Ortega were married, Ortega overdosed on fentanyl and was hospitalized. Thus, the government's claim that Rubio did not know about her husband's drug use strains believability.

As to its second argument, the government contends that by attempting to have Rubio present testimony consistent with his own, Ortega "unlawfully influenc[ed]" a witness's testimony or otherwise came within

the ambit of obstructive conduct. But the government never argued that Ortega's suggestions were false before the district court. *See Rollins*, 8 F.4th at 397. And for good reason: everything Ortega told Rubio to say was supported by the factual record: Ortega had a drug problem; he had young children; he testified that he made a mistake; and, after he sobered up, he reported to his supervisor at work that he had downloaded pornography from the dark web onto his personal computer. These facts were all outlined in the original presentencing report and there is no indication that the probation officer thought they were false.

And "an endeavor to influence a witness to tell the truth" is not obstruction, at least under the witness tampering statute. *United States v. Partin*, 552 F.2d 621, 642 (5th Cir. 1977); *see also Harrington v. United States*, 267 F. 97, 101 (8th Cir. 1920) ("It is not an unlawful attempt to influence or impede a witness . . . for one to seek to obtain from a witness a statement of the facts as he believes them to be, without the exercise of undue influence . . ."). Our case law suggests that the same is true with respect to the obstruction of justice enhancement. *See United States v. Johnson*, 352 F.3d 146, 148 (5th Cir. 2003) ("If a defendant objects to a sentence enhancement based on perjured testimony, the district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition.") (quotation marks and citation omitted); *United States v. Kilgarlin*, 157 F. App'x 716, 719 (5th Cir. 2005) (unpublished) (to support an enhancement for suborning perjury of a witness the district court "must identify false testimony concerning a material matter, indicate the witness testified with willful intent to provide false testimony, and indicate the defendant procured the witness's testimony"). Moreover, there is no evidence that Ortega threatened, intimidated, or otherwise exerted unlawful influence over Rubio's testimony beyond mere attempts to persuade. And

"persuasion . . . is by itself innocuous." *Arthur Andersen LLP v. United States*, 544 U.S. 696, 703 (2005) (cleaned up).

The government nevertheless contends that even if Ortega's conduct "was not unlawful, that is, he did not threaten, intimidate, or otherwise unlawfully influence Rubio," it was still obstructive because "[t]he purpose of Ortega's conversation with Rubio was not to ensure the district court had truthful testimony, but that the district court had his version of testimony from someone other than him." We disagree. We do not think that "trying to influence" a witness to testify truthfully falls into the ambit of what the obstruction of justice enhancement covers. We have repeatedly required proof of untruthfulness where the enhancement is applied for encouraging a witness to testify *dishonestly*. These requirements indicate that Ortega telling his wife what he wanted her to say at his sentencing in her "own words" is not "egregiously wrongful behavior" when everything he said was plausibly true. *Greer*, 158 F.3d at 234–36; *cf. Resol. Tr. Corp. v. Bright*, 6 F.3d 336, 341 (5th Cir. 1993) ("Placing statements in a draft affidavit that have not been previously discussed with a witness does not automatically constitute bad faith conduct.").

Indeed, the sole case that the government relies upon in support of this proposition—*United States v. Graves*, 5 F.3d 1546 (5th Cir. 1993)—is distinguishable. The defendant in *Graves*, who had been indicted for defrauding the United States, "met with his accountant following [the accountant] testifying before the grand jury and debriefed him on all the questions he had been asked and answers he had given." *Id.* at 1555. The defendant then "relay[ed] the testimony of the accountant to [his co-conspirator], so that [the co-conspirator]'s testimony would be consistent" with the accountant's. *Id.* This blatant attempt to corrupt the legal process is in stark contrast to the facts here. First, Ortega was coordinating with his wife, not his criminal counterpart. Second, his wife *asked him* what he thought

she should say. And third, in attempting to guide the focus of her statement to be more in line with his own, Ortega spoke in broad strokes and told Rubio to use her "own words." We simply see no basis for holding that Ortega obstructed justice when, in answering his wife's question about what she should say to the judge, he tried to create a unified, arguably truthful narrative between the two of them.

## IV.

Because the district court erred in applying the obstruction-of-justice enhancement, we VACATE Ortega's sentence and REMAND for resentencing.