# United States Court of Appeals for the Fifth Circuit

---

No. 23-50487

---

United States Court of Appeals
Fifth Circuit

**FILED**

August 5, 2024

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JESUS SOTO PARRA,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:23-CR-7-1

---

Before SMITH, ENGELHARDT, and RAMIREZ, *Circuit Judges*.

IRMA CARRILLO RAMIREZ, *Circuit Judge*:

Appellant challenges the district court's application of a sentencing enhancement for obstruction of justice. Finding plain error, we VACATE and REMAND for resentencing.

I

A

On December 22, 2022, Jesus Soto Parra, an American citizen, sought to enter the United States at the port of entry in Presidio, Texas. Soto Parra

attempted to enter Mexico a short time before, but Mexican officials turned him back due to an issue with his vehicle registration.

On his return, Soto Parra drove past the initial Customs and Border Protection (CBP) officer, but after the officer "yelled at him to stop," "hit the back of [his] truck," and "motioned for him to come back," Soto Parra reversed his vehicle to speak with the officer. In response to the officer's questions, Soto Parra denied having any weapons, ammunition, or cash in excess of $10,000. The officer referred Soto Parra to "secondary for further inspection," where Soto Parra was asked the same questions, and this time he responded that he had a weapon in the vehicle. Officers detained Soto Parra, searched his vehicle, and found a firearm, as well as ammunition and body armor. During his post-arrest interview, Soto Parra initially denied knowing whether transporting a firearm into Mexico was illegal, but he then stated that he assumed it was. Later in the interview, Soto Parra agreed with the statement that he "knew [he] couldn't cross with the gun," but he thought safety was "more important than worst case scenario." Soto Parra also initially denied having a criminal background but eventually acknowledged he had a deferred adjudication on his record.

A grand jury charged Soto Parra with one count of exporting a pistol from the United States without authorization. *See* 18 U.S.C. § 554(a). He pleaded not guilty, proceeded to a jury trial, and was found guilty.

B

On May 8, 2023, the United States Probation Office (the USPO) prepared a Presentence Investigation Report (PSR), applying the 2021 United States Sentencing Guidelines Manual. The USPO obtained information relating to the charged offense from the indictment, an investigative report from federal law enforcement, and Soto Parra's trial. The PSR reflected a base offense level of 14 under U.S.S.G. § 2M5.2(a)(2), the

applicable Guideline for Soto Parra's 18 U.S.C. § 554(a) offense. It added two levels under U.S.S.G. § 3C1.1 because Soto Parra "obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation" into his alleged offense. The PSR noted the enhancement was appropriate because (1) Soto Parra "lied" to the initial CBP officer about whether he had a firearm; (2) during his post-arrest interview, Soto Parra initially denied knowing whether it was illegal to transport a firearm into Mexico; and (3) Soto Parra initially denied having a criminal-history background. Based on a criminal-history category of II and an offense level of 16, the resulting Guidelines range was 24 to 30 months.

Soto Parra objected to "¶ 45, 'Adjustment for Obstruction of Justice' and the 2 points added to the offense level." He contended that the correct offense level was 14, the correct criminal-history category was I, and the correct Guidelines range was 15 to 21 months. The USPO submitted an addendum to the PSR on June 8, 2023, addressing Soto Parra's objections and maintaining that the § 3C1.1 enhancement was warranted for the reasons provided in the PSR.

In a sentencing memorandum, the government contended the § 3C1.1 enhancement was proper because evidence elicited at trial established that Soto Parra had been deceptive throughout the investigation. In the alternative, the government requested an upward variance "in the range of 24-30 months" if the district court sustained Soto Parra's objections.

## C

At sentencing, Soto Parra orally objected to the § 3C1.1 adjustment. He argued that the enhancement was unwarranted because it was based on (i) the officer's having to get Soto Parra's attention to back the vehicle up for inspection, and (ii) Soto Parra's initially indicating that he did not have a weapon but then admitting in the secondary inspection area that he did. After

hearing argument from both sides, the district court overruled the objection in light of "the testimony at trial, the report, the objection by Defense, the response by the Government and the U.S. probation officer."

After overruling Soto Parra's objections, the district court adopted the PSR. In response to Soto Parra's inquiry about whether the government intended to abandon its motion for a variance, the district court stated, "I haven't seen that." The proceedings paused, and the district court then stated, "We'll talk about the variance in a minute." The district court determined the Guidelines range of 24 to 30 months, and Soto Parra requested a Guidelines sentence. Because the district court overruled Soto Parra's objections, the government stated it was no longer "asking for a variance above the guidelines as currently calculated." After the government detailed why it thought the range of 24 to 30 months was appropriate, the district court stated:

> The Court, though tempted to vary upwardly -- . . . does not depart from the recommended sentence. I'll respectfully deny the request for variance by the Government. Though the Court is tempted to vary upward, I will not. I do believe that even had I sustained . . . one or more objections, I still think we're in the right guideline range, 24 to 30 months.

Deciding not to "depart from the recommended sentence" and finding the Guidelines range "fair and reasonable," the district court sentenced Soto Parra to 30 months' imprisonment.

## D

On November 1, 2023, Amendment 821 to the Guidelines took effect, and it was made retroactive by Amendment 825. The PSR, which was prepared prior to Amendment 821, recommended adding two points to Soto Parra's criminal history under § 4A1.1(d), but Amendment 821 made clear that those points could not be added when calculating his criminal history.

On February 26, 2024, the district court granted Soto Parra's motion for a sentence reduction under 18 U.S.C. § 3582(c)(2). After subtracting those points, Soto Parra had only one criminal-history point remaining, which shifted his criminal-history category from II to I. An offense level of 16 and a criminal-history category of I resulted in an amended Guidelines range of 21 to 27 months. The district court then reduced Soto Parra's sentence from 30 months to 27 months. The district court noted the "reduced sentence [wa]s within the amended guideline range."

## II

The parties disagree on the applicable standard of review. Soto Parra contends he preserved the error he raises on appeal, making *de novo* review proper. The government contends the error Soto Parra raised on appeal is not the same error he raised before the district court, making plain-error review proper. Because the applicable standard of review is not outcome determinative, we assume without deciding that plain error—the more stringent standard—applies. *See, e.g.*, *Wallace v. Mississippi*, 43 F.4th 482, 495–96 (5th Cir. 2022) (examining the issue on appeal while assuming without deciding that plain-error review applied); *United States v. Pena*, 720 F.3d 561, 573 (5th Cir. 2013) (same).

Under plain-error review, we must determine "whether the district court (1) committed an 'error,' (2) that is 'plain,' and (3) that affects 'substantial rights.'" *United States v. Pittsinger*, 874 F.3d 446, 451 (5th Cir. 2017) (quoting *United States v. Reyna*, 358 F.3d 344, 350 (5th Cir. 2004)). If so, then "we have discretion to correct the error 'only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Malmquist*, 92 F.4th 555, 562 (5th Cir. 2024) (quoting *United States v. Williams*, 821 F.3d 656, 657 (5th Cir. 2016)). "The defendant has 'the burden of establishing entitlement to relief for plain error,'" which

No. 23-50487

means he must "establish[] each of the four requirements for plain-error relief." *Greer v. United States*, 593 U.S. 503, 508 (2021) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004)).

"The plain error rule is not a run-of-the-mill remedy." *United States v. Gerald*, 624 F.2d 1291, 1299 (5th Cir. 1980). Plain-error review is "very limited," *United States v. Phipps*, 319 F.3d 177, 189 (5th Cir. 2003), and fact-intensive, *United States v. Todd*, 735 F.2d 146, 149–50 (5th Cir. 1984). Reversal for plain error is warranted only in "exceptional circumstances." *United States v. Atkinson*, 297 U.S. 157, 160 (1936).

## III

## A

Courts err when they "[d]eviat[e] from a legal rule."[1] *United States v. Olano*, 507 U.S. 725, 732–33 (1993). Soto Parra contends that the district court erred in applying § 3C1.1, arguing that the application notes demonstrate the inapplicability of the enhancement. The government disagrees.

## 1

Section 3C1.1 of the Guidelines reads:

If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction

---

[1] Even if a court deviates from a legal rule, there is no error if the defendant "waived" that rule. *See, e.g.*, *United States v. Cabello*, 33 F.4th 281, 295–96 (5th Cir. 2022). Waiver is not at issue in this appeal.

and any relevant conduct; or (B) a closely related offense,
increase the offense level by 2 levels.

It "rests on the rationale that 'a defendant who commits a crime and then makes an unlawful attempt to avoid responsibility is more threatening to society and less deserving of leniency than a defendant who does not so defy' the criminal justice process." *United States v. Emery*, 991 F.2d 907, 912 (1st Cir. 1993) (brackets and ellipsis omitted) (quoting *United States v. Dunnigan*, 507 U.S. 87, 97 (1993)); *see United States v. Buckley*, 192 F.3d 708, 710 (7th Cir. 1999) ("The purpose of punishing obstruction of justice is not just to prevent miscarriages of justice but also to reduce the burden on the justice system.").

On its face, § 3C1.1 appears broad, but the application notes clarify that "not all false statements to law enforcement justify the enhancement." *United States v. Phillips*, 210 F.3d 345, 349 (5th Cir. 2000). "[A] § 3C1.1 enhancement typically involves 'egregiously wrongful behavior whose execution requires a significant amount of planning and presents an inherently high risk that justice will in fact be obstructed.'" *United States v. Mendoza-Gomez*, 69 F.4th 273, 277 (5th Cir. 2023) (emphasis omitted) (quoting *United States v. Greer*, 158 F.3d 228, 235 (5th Cir. 1998)).

Two of § 3C1.1's application notes provide non-exhaustive lists of conduct the enhancement does and does not cover. *See* U.S.S.G. § 3C1.1 cmt. nn.4–5. When determining whether to apply § 3C1.1 to conduct "not expressly listed in the commentary, we compare it to the types of conduct listed in the examples provided by the Guidelines." *United States v. Ortega*, 93 F.4th 278, 282 (5th Cir. 2024); *see, e.g.*, *Greer*, 158 F.3d at 235 (finding the conduct at issue "more like the types of conduct to which § 3C1.1 applies than those to which it does not"). While the "relevant question" is "whether the defendant willfully 'attempted to obstruct justice with respect to the

investigation, prosecution, or sentencing of the instant offense of conviction,'" *United States v. Stubblefield*, 942 F.3d 666, 669 (5th Cir. 2019) (per curiam) (quoting *United States v. Alexander*, 602 F.3d 639, 642 n.3 (5th Cir. 2010)), the "focus" should be on "the intent underlying the obstructive conduct," *Mendoza-Gomez*, 69 F.4th at 278. *See Greer*, 158 F.3d at 236 ("[T]he guideline is concerned more with the effect of potentially obstructive conduct than with formalistic definitions.").

"[M]aking false statements, not under oath, to law enforcement officers" does "not warrant application of this adjustment." U.S.S.G. § 3C1.1 cmt. n.5(B); *see Greer*, 158 F.3d at 235 (explaining that "while dishonest," such conduct "carr[ies] little risk of significantly impeding the investigation or prosecution of a case and require[s] substantially less planning than those in the category of behavior to which § 3C1.1 applies"). There is an exception, however—the enhancement does apply when a defendant provides "a materially false statement to a law enforcement officer *that significantly obstructed or impeded the official investigation or prosecution of the instant offense*." U.S.S.G. § 3C1.1 cmt. n.4(G) (emphasis added). "[S]tatements which lead officers on a misdirected investigation" qualify as "significant impediments," while those that "do not cause investigators to expend any additional resources on their investigation" do not. *United States v. Ahmed*, 324 F.3d 368, 373 (5th Cir. 2003). In other words, "a false statement made by a defendant to law enforcement officers cannot constitute obstruction of justice unless the statement obstructs or impedes the investigation at issue *significantly*." *United States v. Surasky*, 976 F.2d 242, 246 (5th Cir. 1992) (emphasis added).

In *United States v. Miller*, the defendant left out "pieces of information from her personal financial statement," and based on these omissions, the district court applied the § 3C1.1 adjustment. 607 F.3d 144, 150 (5th Cir. 2010). On appeal, the defendant contended that applying the enhancement

was improper because "her errors were the result of confusion and mistake[] and did not amount to a willful obstruction of justice." *Id.* at 151. We held that § 3C1.1 applies when "the factual predicates of a willful false statement" are present, and those factual predicates were absent because simply providing incorrect information did not demonstrate that the defendant "knew the correct information and intentionally withheld it in an attempt to frustrate the investigation." *Id.* at 152.

Similarly, in *Ahmed*, the defendant, who pleaded guilty to "a one count indictment . . . for harboring an illegal alien," objected to the application of § 3C1.1, contending that his "statements to the FBI that he did not know" the aliens were not "significant impediments" to the investigation. 324 F.3d at 370–71. We vacated and remanded for two reasons. *See id.* at 371–74. First, there was "absolutely no evidence that Ahmed's statements caused the FBI agents to go on a 'wild goose chase,' or in any other way misled the agents in the sort of manner that has traditionally been the basis for enhancement. Rather, the FBI had to go forward with their investigation as they normally would, i.e. continue searching for and tracking down possible leads as to the sailors['] whereabouts." *Id.* at 373. Second, even if the government had asked Ahmed whether he knew where the aliens were located and Ahmed had denied having that information, § 3C1.1 would have remained inapplicable because Ahmed would have been denying his guilt, which does not qualify for the enhancement. *Id.* at 374; *see* U.S.S.G. § 3C1.1 cmt. n.2 ("A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury) . . . is not a basis for application of this provision.").

By contrast, in *United States v. Smith*, a defendant convicted of conspiracy to commit bank robbery objected to the application of § 3C1.1, arguing that although she "knew the robbers were females but intended to identify them as males in order to throw off investigators," the enhancement

should not apply because (1) "her statements to the FBI constituted nothing more than a denial of guilt and her hindrance of the investigation was insignificant," and (2) "investigators continued to focus on [the defendant] as the prime suspect and . . . little effort was expended looking for black male suspects." 203 F.3d 884, 891 (5th Cir. 2000). We held that the defendant's statement "went far beyond merely denying her own involvement or refusing to provide information, which would not qualify for the obstruction enhancement"—she "specifically sent the FBI investigators on the trail of unknown suspects, whom she specifically described in order to obstruct the investigation into her own and her co-conspirators' involvement." *Id.* Because her statement "significantly impeded the investigation," the district court did not err in applying the enhancement. *Id.* at 892.

2

Here, the district court based its determination that § 3C1.1 applied on three unsworn statements Soto Parra made: (1) the false statement to the initial CBP officer that he did not possess a weapon or ammunition; (2) the statements in his post-arrest interview in which he went back and forth on whether he knew it was illegal to transport a firearm into Mexico; and (3) the false statements that he did not have a criminal history background even though he was on deferred adjudication. But the § 3C1.1 enhancement "typically involves 'egregiously wrongful behavior whose execution requires a significant amount of planning and presents an inherently high risk that justice will in fact be obstructed,'" *Mendoza-Gomez*, 69 F.4th at 277 (emphasis omitted) (quoting *Greer*, 158 F.3d at 235), and Soto Parra's statements do not fit this description. As to statements (2) and (3), there is no evidence in the record that they led "officers on a misdirected investigation" or "a 'wild goose chase,'" nor is there any indication that they "cause[d] investigators to expend any additional resources on their investigation." *See Ahmed*, 324 F.3d at 373. And as to statement (1), it is true

that Soto Parra was sent to secondary inspection after denying that he had a weapon or ammunition, but the record does not reflect that his initial denial "cause[d] investigators to expend any additional resources." *See id.* The CBP officer's explanation of why she sent Soto Parra to the secondary inspection area had nothing to do with his statement regarding weapons and ammunition.

Soto Parra's statements were "dishonest," but without more, dishonesty does not normally warrant the § 3C1.1 enhancement. *See Greer*, 158 F.3d at 235; *see* U.S.S.G. § 3C1.1 cmt. n.2 ("[T]he court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice."). The statements at issue simply "do[] not tend to reflect a considered effort to derail investigations and prosecutions or significantly increase the risk that this in fact will happen."[2] *See Greer*, 158 F.3d at 235. Soto Parra's statements are much more similar to the conduct in Application Note 5 (which does not warrant § 3C1.1's application) than that in Application Note 4 (which warrants § 3C1.1's application).[3] *See Ortega*, 93 F.4th at 282 (instructing courts to compare "conduct not expressly listed in

---

[2] To the extent the district court believed that Soto Parra's sentence should be increased on account of these statements, the Guidelines redirect district courts to other avenues for doing so. *See* U.S.S.G. § 3C1.1 cmt. n.5 ("Some types of conduct ordinarily do not warrant application of this adjustment but may warrant a greater sentence within the otherwise applicable guideline range or affect the determination of whether other guideline adjustments apply . . . .").

[3] Statements (1) and (2) also appear to be unsworn "denial[s] of guilt," which do not warrant § 3C1.1's enhancement. *See* U.S.S.G. § 3C1.1 cmt. n.2.

the commentary" to "the types of conduct listed in the examples provided by the Guidelines").[4]

\* \* \*

Section 3C1.1 does not apply to Soto Parra's statements at issue. The district court therefore erred in applying the enhancement.

B

"Plain error is error that is 'clear' or 'obvious.'" *United States v. Trejo*, 610 F.3d 308, 319 (5th Cir. 2010) (quoting *Olano*, 507 U.S. at 734). The error in question cannot be "subject to reasonable dispute," *Puckett v. United States*, 556 U.S. 129, 135 (2009)—it must be "so clear or obvious that 'the [district] judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it,'" *United States v. Delgado*, 672 F.3d 320, 330 (5th Cir. 2012) (en banc) (quoting *United States v. Hope*, 545 F.3d 293, 296 (5th Cir. 2008)). Unless "the result 'was plainly dictated by relevant laws and decision,'" the error was not plain. *United States v. Sanches*, 86 F.4th 680, 686 (5th Cir. 2023) (quoting *Wallace*, 43 F.4th at 500).

In recommending the § 3C1.1 enhancement, the PSR did not consider whether Soto Parra's statements were material or whether the investigation was significantly impeded. In its support of the enhancement, the

---

[4] The cases cited by the government are not on point. *United States v. Guevara* is inapposite because it involved the creation of a false document, which is conduct warranting § 3C1.1's enhancement. *See* 595 F. App'x 273, 279 (5th Cir. 2014) (per curiam); *see also* U.S.S.G. § 3C1.1 cmt. n.4(C). And both *United States v. Quirion* and *United States v. Pellman* are distinguishable because the defendants' false statements, unlike Soto Parra's, *significantly* obstructed or impeded the administration of justice at various phases of the criminal-justice process. *See United States v. Quirion*, 714 F.3d 77, 82 (1st Cir. 2013); *United States v. Pellman*, 668 F.3d 918, 923, 927 (7th Cir. 2012).

government did not address these issues either. And in applying the enhancement, the district court did not make explicit findings regarding these issues. Based on § 3C1.1's plain text, its application notes, and existing circuit precedent, the district court's error is not subject to reasonable dispute. *See United States v. McNabb*, 958 F.3d 338, 341 (5th Cir. 2020) ("By definition, a close call cannot be the obvious or plain error a defendant needs to show when asserting an error he did not give the district court a chance to fix."); *cf. Delgado*, 672 F.3d at 332 n.11 ("[T]he second prong of plain-error review means that close calls must be resolved in favor of the jury verdict."). The error is clear and therefore plain.

## C

When the district court's error is plain, we next ask whether the error affected the defendant's substantial rights. The parties contest this element.[5]

## 1

A defendant's substantial rights are affected if the error is "prejudicial." *United States v. Maldonado*, 42 F.3d 906, 913 (5th Cir. 1995). "Error is prejudicial if there is a reasonable probability that the result of the proceedings would have been different but for the error." *United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 363 (5th Cir. 2010). "In the sentencing context, a defendant who demonstrates that he was sentenced under an incorrect Guidelines range will typically have demonstrated a reasonable

_____

[5] Soto Parra considers this element in terms of the error's harmlessness. An error is "harmless" if it does not "affect substantial rights." *United States v. Randall*, 924 F.3d 790, 795 (5th Cir. 2019). Accordingly, we understand his arguments to reference the prejudice prong of the plain-error analysis. *See United States v. Lara*, 23 F.4th 459, 477 (5th Cir. 2022) ("The question of whether an error affected an appellant's substantial rights is conceptually similar to the well-known 'harmless error' inquiry, 'with one important difference: It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.'" (quoting *Olano*, 507 U.S. at 734)).

probability that the outcome of the proceeding would have been different but for the error." *United States v. Burnett*, 827 F.3d 1108, 1121 (D.C. Cir. 2016) (Kavanaugh, J.). The Supreme Court has "repeatedly emphasized" that such an error "typically affects" a defendant's substantial rights. *United States v. Moody*, 915 F.3d 425, 431 (7th Cir. 2019) (Barrett, J.); *see Hughes v. United States*, 584 U.S. 675, 685 (2018) ("[I]n the ordinary case[,] a defendant suffers prejudice from a Guidelines error because of 'the systemic function of the selected Guidelines range.'" (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016))). Accordingly, "[a]bsent unusual circumstances," a defendant need only "point[] to the application of an incorrect, higher Guidelines range and the sentence he received thereunder" to demonstrate prejudice. *Molina-Martinez*, 578 U.S. at 201.

One unusual circumstance is when the district court provides "a detailed explanation of the reasons the selected sentence is appropriate" that "make[s] it clear that the judge based the sentence on factors independent of the Guidelines." *Id.* at 200; *see Gall v. United States*, 552 U.S. 38, 50 (2007) ("After settling on the appropriate sentence, [the district court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."); *see also Pulsifer v. United States*, 601 U.S. 124, 157 (2024) (Gorsuch, J., dissenting) ("The guidelines, however, are just that. A sentencing judge may sometimes depart or vary from the guidelines' recommended range, picking a lower or higher sentence if it best fits the defendant and broader penological goals Congress has instructed courts to consider."). When this occurs, "the application of an erroneous Guidelines range will be insufficient to show a reasonable probability of a different outcome absent the error," *United States v. Wikkerink*, 841 F.3d 327, 337 (5th Cir. 2016), and we must determine "[w]hat was driving [the district] judge's decision to impose th[e] sentence" given "the facts and circumstances of the case," *United States v. Sanchez-*

*Hernandez*, 931 F.3d 408, 411 (5th Cir. 2019) (emphasis omitted) (quoting *Molina-Martinez*, 578 U.S. at 200).

Nevertheless, "in the normal course, a non-Guideline sentence still uses the Guidelines range as a reference point." *Wikkerink*, 841 F.3d at 338; *see Molina-Martinez*, 578 U.S. at 204 ("[I]n most cases[,] the Guidelines range will affect the sentence."). So "[e]ven if the sentencing judge sees a reason to vary from the Guidelines, 'if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, then the Guidelines are in a real sense the basis for the sentence.'" *Peugh v. United States*, 569 U.S. 530, 542 (2013) (emphasis omitted) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion)). Whether an incorrect Guidelines range prejudiced sentencing is determined on a "case-by-case" basis. *United States v. Mims*, 992 F.3d 406, 409 (5th Cir. 2021).

2

Here, the record shows that the district court used the Guidelines to anchor its sentencing decision. The district court also increased Soto Parra's sentencing range under an enhancement from the Guidelines. And when imposing the sentence, the district court found "the guideline range . . . to be fair and reasonable." So if "the record is silent as to what the district court might have done had the Guidelines range been correct," then Soto Parra's substantial rights have been affected. *See United States v. Blanco*, 27 F.4th 375, 381 (5th Cir. 2022).

Noting a statement by the district court during sentencing, the government argues that the record is not silent on this matter:

> Though the Court is tempted to vary upward, I will not. I do believe that even had I sustained the -- I sort of see what [the government] is saying. Had I sustained one or more [of Soto

Parra's] objections, I still think we're in the right guideline range, 24 to 30 months.

But this statement "d[oes] not make clear that the district court based the sentence on factors independent of the Guidelines"—rather, it "suggests that the district court used the Guidelines range as a reference point in determining the appropriate sentence." *See Wikkerink*, 841 F.3d at 338; *see also, e.g.*, *United States v. Perez-Mateo*, 926 F.3d 216, 220 (5th Cir. 2019) (finding the defendant's substantial rights affected because "[t]he district court referred to the Guidelines range multiple times and . . . ultimately opted to 'remain within the Guidelines range and impose a sentence at the top of that range'"). This was a scenario in which the district court tethered the sentence imposed to the Guidelines. *Contra, e.g.*, *United States v. Dickson*, 632 F.3d 186, 191–92 (5th Cir. 2011); *United States v. Nino-Carreon*, 910 F.3d 194, 197 (5th Cir. 2018); *United States v. Johnson*, 943 F.3d 735, 738–39, 738 n.2 (5th Cir. 2019). "At the very least, the district court's explanation did not make clear that the district court based the sentence it selected on factors independent of the Guidelines," *Wikkerink*, 841 F.3d at 338; therefore, the record does not reflect what the district court might have done in light of the correct Guidelines range.

\* \* \*

The district court's explanation did not provide enough to enable us to determine whether it based Soto Parra's sentence "on factors independent of the Guidelines." *See Molina-Martinez*, 578 U.S. at 200. Because (1) the district court (at the very least) used the Guidelines as a starting point; (2) calculating the Guidelines range based on § 3C1.1 was error; and (3) the record is unclear as to what the district court might have done had the Guidelines range been correct, Soto Parra's substantial rights are affected by the sentence.

D

Finding the first three plain-error prongs satisfied, we have the discretion to remedy the district court's error so long as it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Hernandez*, 690 F.3d 613, 620 (5th Cir. 2012).

"There is 'no precise formula' for this court's exercise of its discretion to correct a plain error." *United States v. Stoglin*, 34 F.4th 415, 420 (5th Cir. 2022) (quoting *United States v. Andaverde-Tinoco*, 741 F.3d 509, 524 (5th Cir. 2013)). Our discretion "should be employed 'in those circumstances in which a miscarriage of justice would otherwise result.'" *Olano*, 507 U.S. at 736 (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)). And while "[t]he mere fact of plain error that affects substantial rights does not lead to automatic reversal," *Torres*, 856 F.3d at 1099, "[i]n most cases where prong three is satisfied, [we] 'must "exercise our discretion" to remand,'" *United States v. Rodriguez-Peña*, 957 F.3d 514, 515 (5th Cir. 2020) (per curiam) (original alterations omitted) (quoting *United States v. del Carpio Frescas*, 932 F.3d 324, 333 (5th Cir. 2019) (per curiam)).

In sentencing cases, "the Supreme Court 'expects relief to ordinarily be available to defendants'" if the first three plain-error elements are met. *Blanco*, 27 F.4th at 381 (quoting *United States v. Urbina-Fuentes*, 900 F.3d 687, 699 (5th Cir. 2018)); *see Randall*, 924 F.3d at 796 ("In the ordinary case, the failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings."). So long as the case "presents no 'countervailing factors' that might make it an exception to th[is] rule," we will exercise our discretion to remedy the error. *United States v. Perez*, 43 F.4th 437, 446 (5th Cir. 2022) (quoting *Rosales-Mireles v. United States*, 585

U.S. 129, 143 (2018)). We take a "case-by-case, fact-intensive approach" to this decision. *United States v. Carlile*, 884 F.3d 554, 559 (5th Cir. 2018).

The government does not point to any such countervailing factors. Soto Parra's criminal history is not relevant here. *See Urbina-Fuentes*, 900 F.3d at 698 (finding criminal history is "not one of the 'countervailing factors' that the Court had in mind" in *Rosales-Mireles*). Moreover, Soto Parra's current sentence is 30 months. If the district court imposes a Guidelines sentence on remand (15 to 21 months), Soto Parra's term of imprisonment will decrease at least 30%, and at most 50%.[6] This disparity is significant in a relative sense and counsels in favor of reversal. *See, e.g.*, *United States v. Marroquin*, 884 F.3d 298, 301–302 (5th Cir. 2018) (finding a "*four-month* disparity between [the defendant's] sentence and the corrected Guidelines range" sufficiently compelling "to correct the error" (emphasis added)).

Taking these considerations together, Soto Parra's case falls within the class of sentencing cases in which "an incorrect application of the Sentencing Guidelines seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Sanchez-Arvizu*, 893 F.3d 312, 317 (5th Cir. 2018) (per curiam). Because "[t]he public reputation of judicial proceedings would be rightly diminished if we allowed such [an] error[] to go uncorrected," *United States v. Johnson*, 956 F.3d 740, 747 (5th Cir. 2020), we will exercise our discretion and remedy it.

---

[6] The analysis of Soto Parra's sentence is limited to his original sentence because the district court lacked jurisdiction to reduce Soto Parra's sentence while on appeal, thereby making his resentencing ineffective. *See United States v. Willis*, 76 F.4th 467, 473 (5th Cir. 2023).

No. 23-50487

## IV

For these reasons, we VACATE Soto Parra's sentence and REMAND to the district court for resentencing. We indicate no view as to the sentence that the district court, in its discretion, should impose on remand.